23-2226, 23-2234

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

MARK A. BARRY

*Plaintiff-Appellant*,

v.

DEPUY SYNTHES COMPANIES

*Defendant*

DEPUY SYNTHES SALES, INC., trading as DePuy Synthes Spine,
MEDICAL DEVICE BUSINESS SERVICES, INC.,
DEPUY SYNTHES PRODUCTS, INC.,

*Defendants-Appellees*

# PLAINTIFF-APPELLANT'S REPLY BRIEF

Dario A. Machleidt
Kathleen R. Geyer
KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
Telephone: 206-467-9600
dmachleidt@kilpatricktownsend.com
kgeyer@kilpatricktownsend.com

David Clay Holloway
Mitchell G. Stockwell
Courtney A. Dabbiere
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, NE, Suite 2800
Atlanta, GA 30309
Telephone: 404-815-6500
cholloway@kilapatricktownsend.com
mstockwell@kilpatricktownsend.com
cdabbiere@kilpatricktownsend.com

Andrew W. Rinehart
KILPATRICK TOWNSEND &
STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101
Telephone: 336-607-7312
arinehart@kilpatricktownsend.com

Jonathan L. Cochran
LEVAN STAPLETON SEGAL
COCHRAN LLC
1760 Market Street, Suite 403
Philadelphia, Pennsylvania 19103
Telephone: 215-561-1500
jcochran@levanstapleton.com

*Counsel for Plaintiff-Appellant*
*Mark A. Barry*

## CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellant Mark A. Barry certifies the following:

1. The full names of all entities represented by undersigned counsel.

Mark A. Barry

2. Provide the full names of all real parties in interest for the entities.

None.

3. Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more of the stock in the entities.

None.

4. List all law firms, partners and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court.

April Elizabeth Isaacson – Kilpatrick Townsend & Stockton LLP
Christopher P. Damitio – Kilpatrick Townsend & Stockton LLP

5. Provide the case titles and numbers of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case.

*Barry v. Depuy Synthes Companies*, 2023-2234, United States Court of Appeals for the Federal Circuit

*Dr. Mark A. Barry v. SeaSpine Holdings Corp., et al.*, No. 1:20-cv-01787-RGA-SRF (D. Delaware)

6. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).

None.

Date: May 1, 2024

Respectfully submitted,

/s/ D. Clay Holloway
D. Clay Holloway

*Counsel for Plaintiff-Appellant*
*Mark A. Barry*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........ i

I. The Court Abused Its Gatekeeping Discretion. ........ 1

A. Barry Applies the Correct Standard. ........ 1

B. Sufficient Evidence of Infringement, Beyond Experts, Supported Denying JMOL. ........ 3

C. Yassir Correctly Applied "Handle Means." ........ 7

1. Yassir's Application Matched Pre-Trial Rulings. ........ 7

2. Yassir Properly Applied the Construction Without Importing Intent. ........ 13

D. Neal and the Survey Were Reliable. ........ 15

1. Neal's Opinion on Representativeness—Based Upon Sound Methodology—Should Have Been Admitted. ........ 18

a) Neal Had "Good Grounds" for His Opinion. ........ 19

b) DePuy's Criticisms Do Not Support Exclusion. ........ 22

c) Barry Presented Evidence Confirming Representativeness. ........ 30

2. The Survey Provided Reliable Evidence Quantifying Infringement. ........ 32

# TABLE OF AUTHORITIES

## Cases

*Arctic Cat Inc. v. Bombardier Recreational Prod., Inc.*,
2016 WL 9402395 (S.D. Fla. May 3, 2016), *vacated on other grounds*, 876 F.3d 1350 (Fed. Cir. 2017)....9

*Babcock & Wilcox Ebensburg, Power, Inc. v. Zurich American Ins. Co.*,
2005 WL 6068838 (W.D. Pa. Sept. 8, 2005)....33

*C.R. Bard Inc. v. AngioDynamics, Inc.*,
979 F.3d 1372 (Fed. Cir. 2020)....13

*Callaway Golf Co. v. Acushnet Co.*,
576 F.3d 1331 (Fed. Cir. 2009)....2

*Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City*,
383 F.3d 110 (3d Cir. 2004)....15

*Cordis Corp. v. Boston Sci. Corp.*,
658 F.3d 1347 (Fed. Cir. 2011)....10, 11

*Crown Packaging Tech, Inc. v. Belvac Prod. Mach. Inc.*,
2022 WL 821440 (W.D. Va. Mar. 17, 2022)....9, 11

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993)....33

*EMC Corp. v. Pure Storage, Inc.*,
154 F. Supp. 3d 81 (D. Del. 2016)....7, 8

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009)....10

*Freedom Mortgage Corp. v. LoanCare, LLC*,
2023 WL 2570201 (D.N.J. Mar. 20, 2023)....20, 25

*Gen. Elec. Co. v. Ingram*,
513 U.S. 1190 (1995), *cert. denied*....2

*Genuine Enabling Tech. LLC v. Nintendo Co.*,
29 F.4th 1365 (Fed. Cir. 2022)....11

*GlaxoSmithKline LLC v. Glenmark Pharm. Inc., USA*,
2017 WL 8948975 (D. Del. May 30, 2017) .......................................... 19, 29, 31

*Hartle v. FirstEnergy Generation Corp.*,
2014 WL 1317702 (W.D. Pa. Mar. 31, 2014) ............................................. 23, 30

*Hostetler v. Johnson Controls, Inc.*,
2017 WL 3700345 (N.D. Ind. Aug. 28, 2017) ...................................................29

*In re Airline Ticket Comm'n Antitrust Litig.,*
918 F. Supp. 283 (D. Minn. 1996)......................................................................29

*In re Paoli R.R. Yard PCB Litig.*,
35 F.3d 717 (3d Cir. 1994)........................................................................ passim

*In re TMI Litig.*,
193 F.3d 613 (3d Cir. 1999)........................................................................ 15, 19

*In re Zoloft (Sertraline Hydrochloride) Prod. Liab. Litig.*,
858 F.3d 787 (3d Cir. 2017)...............................................................................2

*Innogenetics, N.V. v. Abbott Labs.*,
512 F.3d 1363 (Fed. Cir. 2008)...........................................................................9

*Intel Corp. v. U.S. Int'l Trade Comm'n*,
946 F.2d 821 (Fed. Cir. 1991)...........................................................................13

*Ironburg Inventions Ltd. v. Valve Corp.*,
64 F.4th 1274 (Fed. Cir. 2023) ...........................................................................5

*Jama v. Esmor Corr. Serv, Inc*,
2007 WL 1847385 (D.N.J. June 25, 2007).........................................................25

*Joiner v. Gen. Elec. Co.*,
78 F.3d 524 (11th Cir. 1996), *rev'd*, 522 U.S. 136 (1997) ....................................2

*Karlo v. Pittsburgh Glass Works, LLC*,
849 F.3d 61 (3d Cir. 2017)................................................................... 20, 21, 32

*Lam, Inc. v. Johns–Manville Corp.*,
718 F.2d 1056 (Fed. Cir. 1983)..........................................................................24

*Layne Christensen Co. v. Bro-Tech Corp.*,
871 F. Supp. 2d 1104 (D. Kan. 2012) ................................................................22

*Liquid Dynamics Corp. v. Vaughan Co.*,
449 F.3d 1209 (Fed. Cir. 2006) ................................................................10

*Moleculon Research Corp. v. CBS, Inc.*,
793 F.2d 1261 (Fed. Cir. 1986), *overruled on other grounds* ................................5

*Oracle America v. Google Inc.*,
2016 WL 1743116 (N.D. Cal. May 2, 2016) ................................................................27

*Pharmacia Corp. v. Alcon Labs, Inc.*,
201 F. Supp. 2d 335 (D.N.J. 2022) ................................................................28

*Pittsburgh Press Club v. United States*,
579 F.2d 751 (3d Cir. 1978) ................................................................ 16, 24

*Pugh v. Cmty. Health Sys., Inc.*,
681 F. Supp. 3d 416 (E.D. Pa. 2023) ................................................................17

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000) ................................................................6

*Roche Diagnostics v. Meso Scale Diagnostics, LLC*,
2019 WL 5310220 (D. Del Oct. 21, 2019) ................................................................ 20, 29

*Schloss v. Sears Roebuck & Co.*,
2006 WL 8459575 (E.D. Pa. Sept. 27, 2006) ................................................................17

*Simpson Strong-Tie Co. v. MinTek, Inc.*,
2023 WL 137478 (N.D. Cal. Jan. 9, 2023) ................................................................ 18, 21

*Sloan Valve Co. v. Zurn Indus., Inc.,*
2013 WL 5645353 (N.D. Ill. Oct. 15, 2013) ................................................................11

*Smartflash LLC v. Apple, Inc.*,
2014 WL 7336213 (E.D. Tex. Dec. 23, 2014) ................................................................30

*Sorrell Holdings, LLC v. Infinity Headwear & Apparel, LLC*,
2024 WL 413432 (Fed. Cir. Feb. 5, 2024) ................................................................13

*United States v. Dentsply Int'l, Inc.*,
2000 WL 654378 (D. Del. May 10, 2000) ............................................29

*United States v. Mitchell*,
365 F.3d 215 (3d Cir. 2004)............................................................26

*United States v. Phung*,
127 F. App'x 594 (3d Cir. 2005) .......................................................25

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996)...........................................................11

**Other Authorities**

*Gen. Elec. Co. v. Knight*,
1991 WL 11176388 (U.S. Feb. 20, 1991) ..............................................2

**Rules**

Fed. R. Evid. 702 ..........................................................................19

With misguided attacks on the Third Circuit's "hard look" review for abuse of discretion and continued caselaw mischaracterizations, ignorance of pre-trial rulings, misapplication of critiques having no bearing on the reliability of Barry's experts and evidence, and disregard of evidence, DePuy's whitewashing of what happened below as "careful" and "meticulous" fail. Resp.45, 54.

The district court improperly removed this case from the jury, ignoring the claim construction landscape it created, permitting DePuy to shift its entire challenge to survey methodology after Barry's case was concluded based on inapplicable criticisms, and ignoring evidence reasonable juries could have relied on in finding for Barry. This Court must reverse and remand for trial.

# I. The Court Abused Its Gatekeeping Discretion.

## A. Barry Applies the Correct Standard.

Emboldened by being permitted belated, waived challenges to Barry's evidence and legal mischaracterizations, DePuy pursues strained reads here. DePuy asserts Barry is "flatly wrong" concerning review of expert testimony exclusions. *E.g.*, Resp.36. The Third Circuit's prescribed "hard look" or more stringent review is at ***whether*** the court abused its discretion: "when the district court's exclusionary evidentiary rulings…will result in a summary or directed judgment, we will give them a 'hard look'…to determine if a district court has abused its discretion in

excluding evidence as unreliable." *In re Paoli R.R. Yard PCB Litig*., 35 F.3d 717, 750 (3d Cir. 1994)(citation omitted).

The Supreme Court never touched the "hard look" requirement. The appellees' petitioned for certiorari in *Paoli*, recognizing the Third Circuit "reviewed [exclusion of expert opinions] using an abuse-of-discretion standard." *Gen. Elec. Co. v. Knight*, 1991 WL 11176388, at *20 (U.S. Feb. 20, 1991). The Supreme Court passed on "hard look." *Gen. Elec. Co. v. Ingram*, 513 U.S. 1190 (1995), *cert. denied*.

DePuy distracts by focusing on *Joiner* because any look, hard or otherwise, shows abuse. The Supreme Court reversed in *Joiner* because, unlike *Paoli*, the appellate court abrogated abuse of discretion. *Joiner v. Gen. Elec. Co*., 78 F.3d 524, 529 (11th Cir. 1996), *rev'd*, 522 U.S. 136 (1997). Elevated review was reversed, not the "hard-look" at abuse of discretion *Paoli* demands.

The Third Circuit, since *Paoli*, reiterated it reviews decisions to exclude experts for abuse of discretion, and when exclusion results in directed verdict, its review is the more stringent "hard look." *In re Zoloft (Sertraline Hydrochloride) Prod. Liab. Litig*., 858 F.3d 787, 792 n.22 (3d Cir. 2017). ***This Court*** cited *Paoli* as applicable, post-*Joiner*. *Callaway Golf Co. v. Acushnet Co*., 576 F.3d 1331, 1341 (Fed. Cir. 2009).

"[H]ard looks" ensure courts stay in their gatekeeper lane assessing reliability of ***methodology*** for opinions, ***not the conclusions themselves***. *Paoli*, 35 F.3d at 744. Regardless of the type of look, the record shows abuse of discretion in excluding evidence based on disagreements with expert applications and conclusions, not unreliable methodology.

### B. Sufficient Evidence of Infringement, Beyond Experts, Supported Denying JMOL.

Barry was precluded from comparing the Federal Circuit-affirmed infringing Medtronic product and DePuy's products (Appx2-3), and further precluded from introducing evidence of DePuy's awareness of Medtronic's infringement and "handle means" disputes (Appx1411 (165:7-166:15)). Yet DePuy argues such comparison and awareness, despite no record, shows Barry's case was a house of cards because its products lack handles. Resp.33.

DePuy cites no evidence because the record belies its "no handles" assertion. DePuy's designers admitted the accused products have handles, helping achieve the linked, en bloc derotation at the center of Barry's claims. Br.9; Appx1338 (187:4-188:25)("makes a long handle which [surgeons] can grab"); Appx1335 (175:3-176:7); Appx8601-02 (41:10-42:16)("gave you a nice handle that allowed you to derotate the spine");



Appx6358;




Appx6214.

Disregarding this evidence and having never asserted expert testimony necessary, DePuy bootstraps the court's decision—made after Barry's case—that expert testimony was required to show "handle means." Resp.65-67. DePuy's assertion it is "untrue" that after holding expert testimony was necessary (Resp.64) the court erred by ignoring other circumstantial evidence ignores the findings (Appx62-63).

The jury was presented sufficient evidence on infringement without Yassir on "handle means" through their inspection, lay testimony, or documentary evidence. Br.30-33, 43-44. DePuy tries sidestepping *Ironburg* by asserting jury inspection must be directed to specific components. Resp.66. No such requirement exists. In *Ironburg Inventions Ltd. v. Valve Corp.*, the jury was provided the game controller with no instruction to look at specific parts, and the Court held "Valve identifies no reason why jurors would have been unable to determine for

themselves whether the alleged 'elongate members' in the Steam Controller 'may be bent or flexed by' the jurors pressing on the device itself." 64 F.4th 1274, 1292 (Fed. Cir. 2023). That applies here; ***DePuy*** gave the jury the derotation lever, believing inspection favored it, to inform consideration of "a part designed especially to be grasped by the hand." Br.26-33.

DePuy incorrectly alleges Yassir's exclusion was broader than "handle means." Resp.63-64. Yassir's testimony was excluded on "handle means" alone. And, whether a part is "designed especially to be grasped by the hand" is determinable by jurors manipulating the tools (with hands) or reviewing DePuy's surgical technique guides. Appx6358; Appx6214. The jury reasonably could have combined Yassir's undisturbed testimony, its inspection, and DePuy's argument as to whether coffee cups have handles in finding infringement. Br.43-44.

DePuy ignores further circumstantial evidence the jury reasonably could use in finding infringement. Br.47; *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986)(affirming direct infringement on circumstantial evidence), *overruled on other grounds*. DePuy's argument "Yassir conceded none of the product brochures shows manipulative force being applied simultaneously to two different handle means as the claims require" (Resp.67) ignores the record. Yassir explained, referring to DePuy's surgical guide showing one hand grasping the "handle means," two completed and linked tools are shown and "there is no

reason to build a tool on the other side if you're not going to use it" (*i.e.*, grasp and apply force on both sides). Appx1293 (5:23-6:2); Appx6251; Appx6214.

The court similarly ignored admissions that, with the tools' instructions, support direct infringement. Br.31-33. DePuy—and the court—wrongly limit surgeon admissions to the '787 patent or focus on timing. Resp.68. But the jury heard the admissions read on all asserted patents. Br.32. DePuy's argument that Betz's testimony "does not demonstrate infringement" because he stopped using Expedium before the '787 patent issued (Resp.68) ignores its application to the other patents and that it is circumstantial evidence a jury could rely on to find infringement.

Regarding O'Brien, DePuy erroneously cites only testimony ***the court believed*** "shows *non-infringement…*" (Appx65 (emphasis in original)) and, like the court, ignores O'Brien testimony favoring Barry. O'Brien admitted "[o]ccasionally, yes," he "mechanically linked Expedium derotation tubes together longitudinally along the spine." Appx8601 (41:10-13). He further testified "I know that's a technique [linking along and across the spine] that people have used." Appx8602 (46:20-47:03).

The court's impermissible evidence crediting was error. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).

### C. Yassir Correctly Applied "Handle Means."

#### 1. Yassir's Application Matched Pre-Trial Rulings.

Apart from baldly deeming Yassir's testimony contradictory, DePuy, like the court, never supports how explaining "[a] part designed especially to be grasped by the hand" includes "[a] part that cannot be assembled without grasping it by the hand" violates the construction, much less was Yassir's own construction. Resp.40-42; Appx56-57; Appx1256 (198:12-199:13). Nor can they. Try as they might—out-of-context cropped quotes aside—Yassir combined the construction, the pre-trial rulings regarding the construction's scope, and his knowledge and expertise to explain ***why*** DePuy's tools met the verbatim construction. Br.34-40; *e.g.*, Appx1238-40 (125:21-133:8)(using construction repeatedly in application).

DePuy's cases confirm this is precisely technical experts' roles addressing infringement. *See EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 109-10 (D. Del. 2016). When unpacked, DePuy argues if an expert uses her own words and rationale to explain ***why*** a construction is met, she ***contradicts*** it. This is incorrect. Br.34-40.

DePuy takes issue with Yassir's testimony that different components can be—and are designed to be—"handle means," and the top portion of the accused products, when linked, are exemplary "handle means." Resp.40-44. DePuy ignores Yassir's application of "handle means" to the accused products was blessed pre-

trial at *Markman* and summary judgment and acknowledged at *Daubert* as for the jury. Br.15-17, 34-40; Appx1239 (129:12-23); *see EMC*, 154 F. Supp. 3d at 109-110.

At *Markman*, ***DePuy*** explained Yassir's infringement application of the to-be-adopted construction:

> [T]he handle [is] a completely separate component from the shaft, but [Barry] just wants to rewrite that, get rid of handle entirely, and be talking about the end of the shaft. But again, the patent itself…it's not saying proximal end of the shaft, it's saying handle. This is something else. So one of the things he is arguing is that the handle should be basically anything that's designed to be grasped by the hand. The issue is, when you look at, for example, our accused products practically every part is grasped by hand…He's also grasping parts that have nothing to do with the shafts…they're just the parts that are used to link shafts together…So Barry's proposed definition of in grasping something by hand could theoretically encompass every element of the accused products.

Appx16100-01 (47:22-48:15). The court knowingly adopted Barry's construction. Br.15-16.

At summary judgment, the court confirmed this lever-based[1] application as within the construction's scope. Appx15638-39 ("vertical shafts might be so designed"). At pre-trial *Daubert*, the court heard "[u]nder Yassir's 'application' of the Court's claim construction, any individual part of a spinal derotation tool (and also the entire assembled construct) that is merely capable of being grasped by a

[1] Asserting manipulating ends of levers runs afoul the construction (Resp.43) is baseless given DePuy identified "handles" on derotation levers at *Markman* (Br.6).

hand is a handle means," and held "[a]ny arguments that, contrary to Yassir's opinions, DePuy's derotation tools do not have a 'part that is designed especially to be grasped by the hand' goes to the weight of Yassir's testimony, not its admissibility." Appx15236; Appx15650-51.

Ignoring this, DePuy characterizes Yassir's testimony as contradiction. It is not. Yassir's testimony explaining DePuy designs multiple parts especially to be grasped by the hand was consistent with pre-trial rulings. Br.37-38. Likewise, Yassir's application properly identified exemplary "handle means." Appx1239 (129:12-23); Br.30, 34-36. Thus, like the experts in *Crown Packaging Tech, Inc. v. Belvac Prod. Mach. Inc.*, 2022 WL 821440 (W.D. Va. Mar. 17, 2022) and *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363 (Fed. Cir. 2008), Yassir recited the verbatim construction never ignoring the key requirement: "a part designed especially to be grasped by the hand." Br.34-36.

Yassir's testimony is consistent with DePuy's surgeon designers'. Appx1384 (58:9-59:8); Appx1336 (179:8-180:12). The court allowed DePuy's designers, not proffered experts, to testify (over objection) regarding whether the accused tools have "handle means." *E.g.*, Appx1341 (200:6-13). The presence of competing testimony in construction application confirms this was a jury issue. *Arctic Cat Inc. v. Bombardier Recreational Prod., Inc.*, 2016 WL 9402395, at *7 (S.D. Fla. May 3, 2016)("Although [] improper to ignore the Court's constructions or to utilize

inconsistent constructions, it is appropriate for an expert to apply the Court's constructions...A dispute about the proper application of the Court's constructions is not grounds to exclude [an expert's] opinions."), *vacated in part on other grounds*, 876 F.3d 1350 (Fed. Cir. 2017).

DePuy's cases change nothing. Resp.39. No expert testimony was excluded in *Exergen*; this Court addressed non-infringement based on a previously unconstrued term. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1320 (Fed. Cir. 2009). And in *Liquid Dynamics*, this Court affirmed excluding expert testimony—as to one issue—because, on enablement, the expert held the claims to the "perfect" helix shown in the patent, not the "substantial" helix of the construed claims. *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006). Ironically, *Liquid Dynamics* confirms DePuy and the court improperly rely on cross of Yassir during DePuy's revisit to claim construction, *infra*, rather than Yassir's infringement analysis.

*Cordis Corp.* is also inapplicable. Resp.39-40. In *Cordis*, plaintiff's expert's testimony was tossed when post-trial clarification of "waves" rendered it contradictory to the construction. *Cordis Corp. v. Boston Sci. Corp.*, 658 F.3d 1347, 1356 (Fed. Cir. 2011). This Court explained "this is not a case where [plaintiff] can plead surprise at the trial court's clarification" because during *Markman*, defendant "raised claim construction arguments from which the district court's understanding

logically flows and which, indeed mandate it." *Id.* Here, Yassir applied the construction as proffered, adopted, and endorsed pre-trial. The post-testimony "clarification" did not logically flow from the pre-trial scope.

Like *Sloan Valve Co. v. Zurn Indus., Inc.,* 2013 WL 5645353, at *5 (N.D. Ill. Oct. 15, 2013), the court never sided with DePuy's rejected, but proposed, constrained interpretation pre-trial, making Yassir's application appropriate. Yassir's application was in "good faith" with the construction and pre-trial rulings. *Crown Packaging*, 2022 WL 821440, at *3.

Despite Yassir's proper application, the court's exclusion improperly focused on cross-examination re-trying claim construction: "Yassir did not explain which part of ***Figure 1*** has a *special design* for grasping by the hand." Appx62 (emphasis added); *see also* Resp.41-42. Yassir was not asked which part of Figure 1 demonstrates design for grasping, as this is irrelevant to infringement, unlike the twist in construction underlying the excluded testimony in *Liquid Dynamics*. Br.37-38. DePuy's cases involving experts contradicting intrinsic evidence during claim construction are likewise irrelevant to whether Yassir violated the construction. *See Genuine Enabling Tech. LLC v. Nintendo Co*., 29 F.4th 1365, 1372 (Fed. Cir. 2022); *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1583 (Fed. Cir. 1996).

Nevertheless, Yassir's testimony was consistent with prior court findings regarding Figure 1 and "handle means" including that "items 34 [handles], 36 [shafts], and 38 [shaft distal end] represent the 'handle means'" (Br.38; Appx15160), and "handle means" requires linking along or across the spine such that the cross-link[2]—and most items making up a derotation tool—can be part of the "handle means" (Appx15642).

However, as DePuy notes, the court decided—***after Yassir testified***—that "where a surgeon might want to place her hands has nothing to do with my construction of 'handle means.'" Resp.43. But how a surgeon uses a tool demonstrates the part's design. Indeed, pre-trial, the court properly considered Yassir's testimony and held DePuy's assertion Yassir was contradictory "comes only from hypotheticals presented by DePuy's counsel" and "DePuy's arguments thus involve Yassir's conclusions, which are not the proper subject of a Daubert

[2] The court adopted Barry's construction: "[n]either the claim language nor the specification requires that the tool be on only one side of the spine." Appx15173-74; Appx16108-09 (55:23-56:24). The application-related consequence is as Yassir testified with DePuy acknowledgement (*supra*, 8): where a tool spans the spine, the "handle means"—linking the derotation levers—can be made up of "cross-links," useable to apply manipulative force. Appx1258 (205:21-206:9). The court never found cross-links could not be "a part designed to be especially to be grasped by the hand." The court agreed with Barry the specification explains "multiple wrenches 32, ***linked by wrench cross linking members 40***, depicted in FIG. 1 may be replaced by ***a single handle member from which extend the functional equivalent of the multiple shafts 36 and shaft distal ends 38***." Appx15165-66 (emphasis added). Explaining cross-links can be designed to be grasped by the hand is not contrary to the "handle" terms. Br.39-40.

motion. Any arguments that, contrary to Yassir's opinions, DePuy's derotation tools do not have a 'part that is designed especially to be grasped by the hand' goes to the weight of Yassir's testimony, not its admissibility." Appx15650-51.

The court's post-hoc creation of a moving target for Yassir's application was error.

#### 2. Yassir Properly Applied the Construction Without Importing Intent.

In excluding Yassir, the court erroneously required Barry establish DePuy's ***intent*** to satisfy the construction. Br.35-36, 44-45. Direct infringement has no intent element—an accused device "need only be capable of operating" in an infringing manner. *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991); *see also C.R. Bard Inc. v. AngioDynamics, Inc.*, 979 F.3d 1372, 1378-79 (Fed. Cir. 2020). This Court recently confirmed this where the term "figurative handle" was construed as "a figure, resemblance, or likeness which is designed especially to be grasped by the hand." *Sorrell Holdings, LLC v. Infinity Headwear & Apparel, LLC*, 2024 WL 413432, at *1 (Fed. Cir. Feb. 5, 2024). The Court, noting the possibility the "construction erroneously required that the figurative handle be 'designed especially to be grasped by the hand,' which improperly ***suggested*** a design intent requirement," remanded the case to avoid issues in analyzing direct infringement resulting from importing intent. *Id.*, at *3 (emphasis added).

Pre-trial, avoiding the *Sorrell* problem, the court rejected DePuy's attempts to build-in intent. Appx15649-52 (rejecting "especially" as meaning "above all other functions"); Appx15642 (stressing "my claim construction contemplates an embodiment of Plaintiff's invention in which the surgeon grasps the shaft or lever rather than a separate part ***strictly designed*** for handling")(emphasis added).

Consequently, Yassir explained DePuy's tools met the construction without importing intent. Br.35-36. Yassir accounted for purpose and actual use as a surgeon, explaining, for example, "the ability of the surgeon to grasp [surgical instruments] by hand is actually an integral feature, a very important [feature]. And so they have to be especially designed for that because all spine surgery is done by hand." Appx1256 (198:14-199:13). Far from ignoring "especially," Yassir told the jury "[i]t's very difficult" to design surgical instruments "grasped by the hand but not especially designed to be grasped by the hand." Appx1256 (200:5-10).

After Yassir testified, the court erroneously held the construction and application required showing design intent, ruling applying the construction with explanation of how surgeons use tools violated it. Appx61-62. Remand is necessary under *Sorrell*. The court's focus on "***special design***" as necessitating intent as opposed to the broad, plain dictionary[3] definition of "handle" combined

[3] This is the source of the "handle means" definition. Appx16668-69.

with the other claim elements creating "handle means," changed the intent-less pre-trial construction and created non-existent error in application.

**D. Neal and the Survey Were Reliable.**

DePuy cannot justify exclusion of Neal and the Survey. Despite finding pre-trial the evidence Barry would, and did, present evidence sufficient to pass the *Daubert* gate, the court misapplied irrelevant criticisms and determined Neal's conclusions were wrong after testifying. This exclusion runs contrary to precedent and does not withstand a "hard look" review. Br.55-56; *see In re TMI Litig.*, 193 F.3d 613, 666 (3d Cir. 1999)(holding *Daubert* rulings will be overturned for abuse of discretion if decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact")(citation omitted).

DePuy suggests exclusion was proper because the Third Circuit has excluded surveys. Resp.44. This proposition does not demonstrate proper gatekeeping here. DePuy's reliance on *Citizens Financial* and *Pittsburgh Press* is misplaced. Resp.44-45. The court in *Citizens Financial* explained the flexible reliability inquiry has no set rules applicable to all surveys. *Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 118-19 (3d Cir. 2004). There, exclusion was because the selected universe of respondents did not "fit" the factual question for the jury. *Id.* at 119. Here, in contrast, "fit" was not disputed; there was

no argument, much less a finding, that the universe was wrong, thus lacking "fit" to the factual question.

Likewise, *Pittsburgh Press* is distinguishable. There, exclusion was because the survey was not scientifically valid as the surveyor had never conducted a survey (Neal has been admitted 40 times); the respondents had an interest in the litigation's outcome (surgeons here are immune from liability); and there was no way to check respondents' memory for accuracy (unrebutted evidence here indicated survey best practice uses a two-year look back and embedded memory checks). *Pittsburgh Press Club v. United States*, 579 F.2d 751, 759 (3d Cir. 1978); Br.12-14.

While judges in the Third Circuit may properly have acted as gatekeeper excluding surveys previously, that did not happen here.

DePuy rewrites history arguing the objections the court relied on were timely raised, characterizing them as "(1) failure to establish representativeness of the sample, and (2) design flaws in the survey questions that 'ensured that any results would be meaningless.'" Resp.45. But those were not the challenges DePuy made pre-trial; DePuy raised two, narrow grounds for exclusion. Br.18-19; Appx15290-92. During Neal's testimony, DePuy's only articulated objection was "We have our *Daubert* issues with his methodology" (Appx1162 (50:19-51:1)), referencing the pre-trial filing. After, DePuy stated its objections "may actually be

more focused." Appx1262 (221:20-25); Br.22. Relying on this representation, Barry acknowledged he could comply with the court's timetable. Appx1261-62 (220:24-223:17). But different and broader were the challenges lobbed thereafter[4] and adopted by the court. Br.22. Permitting "we have our issues" objections to preserve unarticulated and unlimited objections violated the Rules of Civil Procedure, which ensure parties articulate, preserve, and narrow challenges to avoid trial by ambush. And dismissing this flawed process as "ample opportunity to respond" underscores the errors below. Appx33; Br.21-22, 70-71.

This was unlike DePuy's cited cases (Resp.62), where "Plaintiff had 'an adequate opportunity to defend the admissibility of [the expert's] testimony" because the issue of the expert's qualification had been raised when the arbitration [of the same case] panel heard the case and in the defendant's motion for summary judgment." *Pugh v. Cmty. Health Sys., Inc.*, 681 F. Supp. 3d 416, 435 (E.D. Pa. 2023); *see also Schloss v. Sears Roebuck & Co.*, 2006 WL 8459575, at *3 (E.D. Pa. Sept. 27, 2006)(same).

Ultimately, the court exceeded its gatekeeping role in excluding Neal and the Survey, mandating reversal. *Paoli*, 35 F.3d at 745.

---

[4] Despite DePuy's replacement survey expert identifying the new challenges before trial (improperly—Appx16820-25), DePuy never challenged Neal under *Daubert* on those grounds, recognizing they go to weight, not admissibility.

### 1. Neal's Opinion on Representativeness—Based Upon Sound Methodology—Should Have Been Admitted.

The first basis for exclusion—"failure to establish representativeness"—presumes Neal had to conduct specific analyses, despite designing a scientific survey using accepted methodology, to ***prove*** his conclusion that the 164 respondents were representative of the target universe was correct and failed to do so. Resp.46-57. This is legally and factually wrong. *Simpson Strong-Tie Co. v. MinTek, Inc.*, 2023 WL 137478, at *3 (N.D. Cal. Jan. 9, 2023).

*First,* DePuy advances, and the court applied, a standard contrary to Third Circuit law requiring experts have "good grounds" supporting conclusions. Under the correct legal standard, Neal had "good grounds" for his opinion.

*Second,* as below, DePuy criticizes Neal not performing specific analyses that ***might*** bear on representativeness it deems necessary to show representativeness, despite not raising them in its pre-trial *Daubert* challenge. This was improper, and the court's reliance on DePuy's arguments as its bases for exclusion was abuse of discretion.

*Third*, though unnecessary, Barry introduced evidence confirming representativeness of Neal's sample. DePuy, like the court, improperly disregarded this evidence.

**a) Neal Had "Good Grounds" for His Opinion.**

The Third Circuit expressly rejects DePuy's proposal that the proponent must prove correctness of the expert's opinions to establish reliability. Br.58-59. As the court recognized, "reliability does not, however, require the proffering party to demonstrate the correctness of an opinion." Appx15648-49 (citing *Paoli*, 35 F.3d at 744). "[A]n expert's testimony is admissible so long as the *process or technique* [as opposed to the conclusion] the expert used in formulating the opinion is reliable." *TMI*, 193 F.3d at 664 (citation omitted). And "a judge should find an expert opinion reliable under Rule 702 if it is based on 'good grounds,' *i.e.*, if it is based on the methods and procedures of science." *Paoli*, 35 F.3d at 744. The Third Circuit has repeatedly cautioned determining reliability "is not that high" a standard and "the evidentiary requirement of reliability is lower than the merits standard of correctness." *Id.* at 744, 745.

Barry met that standard. Br.50-54. Neal provided extensive, uncontroverted evidence that his method of obtaining a representative sample of a target population of unknown members, with unobtainable demographic characteristics, is an accepted manner of arriving at a representative sample of a population. *Id.* This was sufficient to show reliability under Rule 702. *See, e.g.*, *GlaxoSmithKline LLC v. Glenmark Pharm. Inc., USA*, 2017 WL 8948975, at *10 (D. Del. May 30, 2017)(accepting survey where sample frame (1) used panels from national research

firm; (2) used non-probability sampling from this broad pool; and (3) compared results to known market data); *Freedom Mortgage Corp. v. LoanCare, LLC*, 2023 WL 2570201, at *17 (D.N.J. Mar. 20, 2023)(admitting nonrandom survey of less than total population as accepted in art (collecting cases) and review of data comported with target); *Roche Diagnostics v. Meso Scale Diagnostics, LLC*, 2019 WL 5310220, at *3 (D. Del Oct. 21, 2019)(admitting survey where "[expert] provided a detailed explanation of his methodology, including the reasons for selecting a non-probability sample, his accounting of non-response bias, his methods for ensuring reliable answers, and his reasons for weighing the data" because critiques are jury considerations).

Ignoring this precedent, DePuy, like the court, contests the correctness of Neal's conclusions, arguing "Neal's Sample Was Not Representative of Any Target Universe," rendering his opinion unreliable. Resp.50-54. DePuy's Response never mentions "good grounds." Indeed, neither DePuy nor the court, after disagreeing with Neal's conclusion and proposing various methodological flaws, evaluated whether Neal's opinions nevertheless rested on "good grounds." This was error. *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 83 (3d Cir. 2017)(holding "District Court erred by applying a 'merits standard of correctness,' a higher bar than what Rule 702 demands" because "[a]fter identifying a potential

methodological flaw, the District Court did not proceed to evaluate whether Dr. Campion's opinion nonetheless rests on good grounds")(citation omitted).

The Third Circuit rejects such a "bright-line exclusionary rule," recognizing "there could be good grounds for an expert's conclusion 'even if the judge thinks...a scientist's methodology has some flaws such that if they had been corrected, the scientist would have reached a different result.'" *Id.* (quoting *Paoli*, 35 F.3d at 744). That is true here. Neal undisputedly conducted the Survey according to principles[5] accepted as reliable to obtain a representative sample. Br.51-55. Applying an incorrect standard was error. *Karlo*, 849 F.3d at 83.

Error is underscored by the disregard of evidence Neal's sample was representative as *ipse dixit*. Resp.47. Beyond being incorrect,[6] the testimony relied on is misleading. *Id.* (quoting Appx1179). DePuy ignores Neal explained "I think my actual words were that this data…supports that we have a mix of the different subspecialities that perform these surgeries" (Appx1179 (118:7-119:12)) and had previously explained both the accepted sampling method (Br.53-54) and accepted practices of comparing these results to independent market data (Appx1171-72

[5] DePuy argues embedded screening questions are inapplicable to establishing representativeness. Resp.56. This ignores survey practice and caselaw. Br.50-53; Appx16363-64; *Simpson*, 2023 WL 137478, at *3.

[6] Latin lesson aside, the literal translation applies to any testimony. The analysis is whether the conclusion was supported by evidence ***beyond*** "because I am an expert."

(86:19-89:24)). Further, DePuy's quoted exchange came after the court instructed Neal to answer "yes or no" and invited DePuy's counsel to re-ask. Appx1163 (56:7-23). This is far from showing Neal's conclusion of representativeness was *ipse dixit* and not a basis for exclusion. *See, e.g.*, *Layne Christensen Co. v. Bro-Tech Corp.*, 871 F. Supp. 2d 1104, 1111-12 (D. Kan. 2012)(holding because "[expert]'s opinion is supported by evidence other than his own expertise and experience, there is no basis to exclude his opinion as improper *ipse dixit* testimony").

Decided on credibility, the court ignored testimony on selection mechanisms and concluded "I am quite troubled by the idea of pulling 164 people out of the air, which it seems to me is what he did, and basing a determination of what percentage of spine derotation procedures were used over a period of time." Appx1225 (76:9-15); Appx1225 (76:1-9)("…Dr. Neal's credibility, his seeming inability to answer questions…his contradictory testimony…."). But this was the jury's job. *Id.*

**b) DePuy's Criticisms Do Not Support Exclusion.**

None of DePuy's criticisms justifies exclusion. Resp.48-54. Not only are they wrong based on the evidence and type of survey conducted, but also precedent recognizes such criticisms go to weight, not admissibility. *E.g.*, *Hartle v. FirstEnergy Generation Corp.*, 2014 WL 1317702, at *6 (W.D. Pa. Mar. 31,

2014)("arguments with respect to insufficient pretesting, improper information gathering, confusion by respondents, nonrepresentative and nonrandom sampling, hypothetical bias, error rate, and inconsistent and unconventional statistical analysis are 'technical flaws' that go to the weight rather than admissibility of the survey").

***Neal Clearly Defined the Target Universe:*** Neal defined a target universe matching the relevant population for purposes of extrapolation to third-party market data and conducted the Survey using accepted methods to obtain a representative sample. Br.50-55. DePuy acknowledges Neal testified his target universe "is the spine surgeons who are performing pedicle screw surgeries involving simultaneous derotation." Resp.48. DePuy attempts to bolster the court's mischaracterization of Barry's statement regarding the target universe (*compare* Resp.48-49 *with* Br.49-50) and misstates Schenk's universe as "all surgeons who perform spinal-deformity surgeries" (Resp.49). But Neal testified the Survey captured all deformity surgeries,[7] narrowed to simultaneous derotation surgeries, narrowed to infringing surgeries. Br.57; Appx1164 (57:15-25); *see also* Br.12-14; Appx15870; Appx1313 (86:22-87:19).

[7] DePuy and the court continue ignoring DePuy had Neal clarify the 50,000 number referenced surgeries, not surgeons. Appx1179 (117:2-23).

DePuy, like the court, forgets Barry conducted the Survey because DePuy does not track its instruments' use. Br.12-14. Where the infringer's conduct prevents the patentee from accurately determining damages or makes it more difficult, inferences are drawn against the infringer and the best available evidence used. *Lam, Inc. v. Johns–Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

***DePuy's Prescribed Analyses to Prove Representativeness Are Not Required:*** DePuy maintains that to establish reliability, despite testifying "his methodology [detailed elsewhere] would result in a representative sample," Neal also had to conduct specific, inapplicable analyses to prove his sample was representative. Resp.47-54. This is wrong. *Supra*, 21-22.

DePuy's caselaw achieves nothing. In *Pittsburgh Press*, the excluded survey was not designed to be representative and was biased as the respondents were "interested in PPC's prevailing in the lawsuit," "advised about the nature of the litigation and the survey," and told "which answers would benefit the Club." 579 F.2d at 759. Not the case here—Neal used unbiased recruitment and neutral questions to achieve representativeness. Br.51-52.

DePuy's other criticisms are inapplicable. Under DePuy's rubric for establishing representativeness, non-probability surveys will never be reliable because DePuy asks this Court, as it did below, to assess whether Neal's method

established a representative sample based on considerations for probability surveys having no bearing on representativeness of Neal's non-probability survey.

Courts routinely admit non-probability surveys conducted as Neal did here as reliable despite experts not conducting DePuy's prescribed "tests." Appx16359; *see, e.g.*, *United States v. Phung*, 127 F. App'x 594, 597-98 (3d Cir. 2005); *Jama v. Esmor Corr. Serv, Inc*, 2007 WL 1847385, at *27 (D.N.J. June 25, 2007).

DePuy incorrectly suggests the court acknowledged the usefulness of non-probability studies provided they meet certain criteria. Resp.50-52. The court, like its cited reference, is expressly discussing ***probability*** studies when stating "surveys may be useful even if they fail to meet" certain criteria. Appx34; Appx16740-41. While DePuy's inapplicable critiques might be adversarial cross-examination, Neal did not have to perform these tests to confirm his conclusion to pass the *Daubert* gate. *See Jama*, 2007 WL 1847385, at *27; *Freedom Mortgage*, 2023 WL 2570201, at *17.

Nevertheless, Neal explained why the probability survey analyses DePuy requests are unnecessary and his design could be extrapolated. Br.51-55. Regarding DePuy's extrapolation criticism (Resp.49), DePuy cites testimony having nothing to do with its 12-year damages window complaint, which at most would be criticism of the damages expert, not Neal.

Neal also explained why he did not compare demographic characteristics of his sample to a larger, unknowable population of surgeons[8] in the United States to "check" the representativeness of his results. Resp.50. Neal explained, without rebut, why this is neither required nor helpful here given the type of survey—absent census level information about the geographic location, age, etc. of the total population of U.S. surgeons performing deformity surgeries, there is nothing to compare this information to. Br.49-51. DePuy's expert agreed[9] the universe was not knowable. Appx16004 (129:11-131:17)(DePuy's expert acknowledging "based on 10 to 15 days of investigations" no data set permitted such demographic comparison).

DePuy doubles down on the erroneous statements that Neal's testimony that his multi-method approach established representativeness was *ipse dixit* and wrong, and asserts the evidence "showed the sample to be unrepresentative and likely biased." Resp.54-55. DePuy's argument is not based in fact or law. In

[8] Neither DePuy nor its expert say Neal must conduct analysis with this data or that it would be probative on representativeness—these critiques are for the adversarial process. *United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004).

[9] Nor did DePuy's expert conduct any analysis, despite having the same information on the respondents. DePuy flagrantly ignores the discovery deadlines and, for the first time, offered hearsay (Resp.53) it neglected to obtain: declarations from another case, three years after fact discovery closed, from surgeons DePuy knew of since 2018. Appx15913. This Court should not countenance such flaunting of the record.

criticizing the sources into which Neal cast a wide net to obtain his sample, DePuy ignores unrebutted testimony that using three such sources is accepted in the field and standard for obtaining representative samples in a non-probability survey.[10] Br.50-51.

DePuy repackages its argument that soliciting respondents from the SRS society skewed the results. Resp.55. But only 33 of the 164 respondents were members of SRS, and no evidence suggested 20% of the total sample frame being members of SRS would bias the results. Appx15703-04 (178:15-179:21).

To the contrary, the undisputed evidence was Neal used accepted scientific techniques—sending invitations to a universe broader than the target universe with screening questions in the Survey—to winnow down to respondents within the target universe. Br.50-51. This was sufficient for admissibility. *E.g.*, *Oracle America v. Google Inc*., 2016 WL 1743116, at *5-6 (N.D. Cal. May 2, 2016)(endorsing screening questions to narrow universe; admitting survey crediting expert's explanation of methodology and opinions drawn from survey). The *Oracle* court highlighted "[t]he standard for a 'proper universe' of respondents, such that a survey would be sufficiently reliable to be admissible, is not as demanding as [challenger] claims," and "[o]bjections based on such defects went only to the weight, not the admissibility, of the survey." *Id.*

[10] DePuy wrongly characterizes this as *ipse dixit*. Resp.51, 55.

DePuy's cited case, *Pharmacia Corp. v. Alcon Labs, Inc.*, 201 F. Supp. 2d 335 (D.N.J. 2022), does not support its position. In *Pharmacia*, the court excluded the survey because the expert pre-excluded an entire class of relevant respondents, did not determine characteristics of the selected respondents, used knowingly misleading questions, and used a survey taker with a vested interest. *Id.* at 363-64. This case in no way resembles *Pharmacia*. Contrary to ignoring groups, Neal cast a wide net and used non-biased screening questions to ensure the results were from proper respondents. Br.51-55. Along with the other accepted practices he incorporated, Neal's approach justified his "good grounds." *Id.*

***Non-Response Bias Does Not Apply:*** DePuy again disregards Neal's explanation on why he did not need to consider non-response bias. Resp.51. Contrary to DePuy's assertion, Neal did not "summarily dismiss[]" non-response rate (Resp.51); he explained the response rate was acceptable (and normal)—an uncontested point despite DePuy's emphasis of it—and why analysis of non-response was not relevant to representativeness (Br.59-62) or feasible here (Appx1167 (71:15-72:10)). This is a far cry from being *ipse dixit*.

Misdirecting, DePuy asserts Barry improperly distinguishes *Hostetler* as addressing issues involved in probability studies. Resp.51-52. DePuy acknowledges the survey in *Hostetler* was a non-random survey of a fully known class, *i.e.*, a probability survey could be performed. *Id.* Barry explained, and DePuy

does not address, non-response bias was an issue there because, unlike here, the entire target population was known and "instead of conducting a ***random sample***" of the class—which can only be done in probability surveys (Br.n.6)—the expert only surveyed those he could reach and failed to address possible differences between those and the complete class. *Hostetler v. Johnson Controls, Inc.*, 2017 WL 3700345, at *2 (N.D. Ind. Aug. 28, 2017).

It was undisputed the entire universe was not knowable (*supra*, 26), so Neal explained non-response bias is not useful on representativeness. Br.53-54; Appx16362.

Nor do *GlaxoSmithKline* and *Roche* support DePuy's position Neal needed to address non-response bias. Resp.52. Those cases explain challenges based on the response rate go to weight. *GlaxoSmithKline*, 2017 WL 8948975, at *11; *Roche*, 2019 WL 5310220, at *3.

***<u>Follow-Up Was Not Required</u>:*** This is another artificial requirement DePuy belatedly raised. Resp.52-53; Br.22. Courts have explained "[t]he primary way to evaluate the reliability of a survey is to test its methodology, not to re-interview survey respondents." *United States v. Dentsply Int'l, Inc.*, 2000 WL 654378, at *8 (D. Del. May 10, 2000)(citing *In re Airline Ticket Comm'n Antitrust Litig.,* 918 F. Supp. 283, 288 (D. Minn. 1996)("Proper statistical methodology should provide

the material needed and minimize the time-consuming, expensive, and repetitious inquiry.”).

Moreover, classic DePuy, newly argues[11] Neal’s failure to conduct follow-up warranted exclusion because he used email and thus could not check if someone other than the surgeon answered. Resp.52-53. DePuy cites no law supporting this, and DePuy’s survey expert never raised it as a critique. Follow-up is not standard practice. Appx1182 (130:24-131:10).

***<u>Neal Pretested the Survey</u>:*** While the court disagreed with Neal’s pretests (*see* Br.62-63), this is another technical critique that goes to weight, not admissibility, and did not support exclusion. *E.g.*, *Hartle*, 2014 WL 1317702, at *6; *Smartflash LLC v. Apple, Inc.*, 2014 WL 7336213, at *4 (E.D. Tex. Dec. 23, 2014)(holding whether pretests are too dissimilar from survey is jury issue).

#### c) Barry Presented Evidence Confirming Representativeness.

Proving correctness is not required, but in rejecting methodological challenges, courts have found persuasive comparing survey results to independent market share data to confirm representativeness, as Neal did here—explaining Survey-determined 25% market share “matched up to” third party-reported 23.1%.

[11] DePuy buttresses this argument with the same ambush discussed above. Resp.53; *supra*, n.9.

*GlaxoSmithKline*, 2017 WL 8948975, at *10; Br.53-55. DePuy and the court disregard this evidence to characterize Neal's conclusion as *ipse dixit*. *Supra*, 21.

DePuy's challenge to Barry's use of independent market data is hypocritical. Resp.55-57. Neal properly referenced the market data in response to new critiques DePuy's replacement survey expert advanced after rewriting a three-year old report, over objection. *Supra*, n.4. Because previously DePuy's universe challenge was based on Neal's sourcing (*supra*, 16-17), and the judge permitted DePuy's new critiques, Barry had Neal explain at trial why DePuy's criticisms were wrong and ***market data supported representativeness***. Appx1171-72 (86:19-89:24).

Similarly, DePuy's critique of Barry using his damages expert's calculation that the Survey's covered 13% of total surgeries is misguided. Resp.57. It is of no moment who introduced this evidence supporting representativeness. As DePuy points out, it was Barry's burden to show representativeness. Barry's damages expert, who extrapolated the sample frame to the target universe (Appx1313-14 (87:10-89:24)), supported representativeness of the sample frame to the target universe during the court's cross-examination—calculating Neal's Survey captured 13% of the total spinal deformity market and explaining Neal's Survey is the only inquiry into derotation procedures (Appx1315-16 (93:13-99:15)). Had Neal done this, DePuy's "*ipse dixit*" tally assuredly would be nine, not the meager eight where it stands.

DePuy disregards Neal's reliance on the cross-sectional make-up of the Survey respondents as evidence of representativeness again as *ipse dixit*. Resp.55-56. Neal explained why the cross-section confirmed representativeness, including that Yassir, as surgeon expert, indicated "[t]hose are the areas where spinal deformity procedures are performed." Appx1165 (61:20-62:5).

### 2. The Survey Provided Reliable Evidence Quantifying Infringement.

Defending purported flaws in the questions, DePuy demonstrates the court improperly immersed itself in the science and conclusions to make factual findings on correctness. *Karlo*, 849 F.3d at 83.

For example, DePuy's Response demonstrates the court engaged in fact-finding regarding words of the questions—such as "simultaneously rotating 2 or more vertebral bodies in the axial plane," "segmental derotation," and unlinked *en bloc* derotation—combined with witness testimony purportedly describing *en bloc* and segmental derotation, mandated certain answers: "a survey participant asked to categorize her *en bloc* procedures accurately would necessarily report zero Type 1 surgeries."[12] Resp.58-60(quoting Appx40).

---

[12] To bolster the court's ruling, DePuy goes further, stating "[t]he outcome [of over half responding surgeons putting surgeries in Type 1] was absurd and suggested that those surgeons were either confused or not paying attention—and the results were therefore unreliable and subject to exclusion on that ground." Resp.58. But the unrebutted evidence, DePuy offering no technical opinion on the Survey, was respondents were surgeons, would understand the questions, and "it's actually

Engaging in fact-finding while ignoring contrary evidence in reaching its conclusions was error. Whether a question was too closed, might have contained an error, or contained other technical defects are steadfastly questions of weight, not admissibility. Br.63-64; *see also Babcock & Wilcox Ebensburg, Power, Inc. v. Zurich American Ins. Co.*, 2005 WL 6068838, at *5, 9 (W.D. Pa. Sept. 8, 2005). DePuy ignores this. Resp.57-60.

DePuy brushes-away record evidence as “not spoken at trial” (Resp.59), including surgeon explanation that “simultaneous segmental” derotation means simultaneous rotation of two vertebrae not mechanically linked by tools. Br.65-66. This highlights the discretionary failures below. Because DePuy had not challenged this wording, choosing only to focus on the lack of “I don’t know,” Barry did not marshal this testimony before the jury, submitting it during the post-hoc briefing. The same is true for all DePuy’s alleged inaccuracies in how surgeons would read the questions. When different but simultaneously reliable conclusions can result, the gatekeeping focus on an expert’s opinion should be the methodology used, not the conclusions. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 594-95 (1993).

---

relatively easy [for a surgeon] to apportion your cases into” the Survey types. Appx1234 (109:21-110:11).

Date: May 1, 2024

Respectfully submitted,

/s/ D. Clay Holloway
D. Clay Holloway

*Counsel for Plaintiff-Appellant*
*Mark A. Barry*

CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned certified that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B). Exclusive of the portion exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b), this motion contains 6989 words, as counted by the word-processing system used to prepare the brief.

Dated: May 1, 2024

*/s/ D. Clay Holloway*
D. Clay Holloway
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street N.E.
Suite 2800
Atlanta, GA 30309
(404) 815-6500
cholloway@kilpatricktownsend.com

*Counsel for Plaintiff-Appellant Mark A. Barry*