# United States Court of Appeals for the Federal Circuit

MARK A. BARRY,

*Plaintiff-Appellant*,

v.

DEPUY SYNTHES COMPANIES,

*Defendant,*

DEPUY SYNTHES SALES, INC., trading as DePuy Synthes Spine, MEDICAL DEVICE BUSINESS SERVICES, INC., DEPUY SYNTHES PRODUCTS, INC.,

*Defendants-Appellees.*

Appeals from the United States District Court for the Eastern District of Pennsylvania in No. 2:17-cv-03003-PD, Judge Paul S. Diamond

## DEFENDANTS-APPELLEES' PETITION FOR REHEARING EN BANC

Patrick J. Norton
Kenneth Luchesi
Thomas S. Koglman
T. Kaitlin Crowder
JONES DAY
901 Lakeside Avenue
North Point
Cleveland, OH 44114

Gregory A. Castanias
Tracy A. Stitt
Brendan Duffy
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
(202) 879-3939
gcastanias@jonesday.com

Kevin V. McCarthy
JONES DAY
250 Vesey Street, 31st Floor
New York, NY 10281

# CERTIFICATE OF INTEREST

**Case Number:**     23-2226, -2234

**Short Case Caption:**  *Mark A. Barry v. DePuy Synthes Companies*

**Filing Party/Entity:**  DePuy Synthes Products, Inc.; DePuy Synthes Sales, Inc.; Medical Device Business Services, Inc.

I certify the following information and any attached sheets is accurate and complete to the best of my knowledge.

Date: March 23, 2026          Signature:  /s/ *Gregory A. Castanias*
                                          Gregory A. Castanias

1. **Represented Entities:**  Provide the full names of all entities represented by undersigned counsel in this case.  Fed. Cir. R. 47.4(a)(1).

   DePuy Synthes Products, Inc.
   DePuy Synthes Sales, Inc.
   Medical Device Business Services, Inc.

2. **Real Party in Interest.** Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.  Fed. Cir. R. 47.4(a)(2).

   None.

3. **Parent Corporations and Stockholders.**  Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  Fed. Cir. R. 47.4(a)(3).

   Johnson & Johnson

4. **Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

   **Akin Gump Strauss Hauer & Field LLP:**  Steven D. Maslowski; Jonathan J. Underwood

**Morrison Foerster:** Mark L. Whitaker; Joshua A. Hartman; Kevin T. Kwon; Eugene Marder; Corinna Alanis; Barbara N. Barath

5. **Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

   Yes. See separate Notice of Related Case Information at page xvi.

6. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

   None/Not Applicable.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST .................................................................i

TABLE OF AUTHORITIES ....................................................................iv

TABLE OF ABBREVIATIONS ..............................................................vi

STATEMENT OF COUNSEL ................................................................ vii

INTRODUCTION ...................................................................................1

BACKGROUND .....................................................................................3

    A.    The Technology and Patents........................................................3

    B.    The Lawsuit, Trial, and Exclusion of Barry's Experts ..............4

    C.    The Panel Decision and Dissent ................................................7

ARGUMENT ...........................................................................................8

I.    EN BANC REHEARING IS NECESSARY TO SECURE UNIFORMITY WITH *ECOFACTOR* AND AMENDED RULE 702 ...................................................................................................8

    A.    The panel's "weight-not-admissibility" treatment of claim-construction contradiction is incompatible with *EcoFactor* and Rule 702 gatekeeping.......................................9

    B.    The panel's dismissal of survey-methodology defects as matters of "weight" is incompatible with *EcoFactor* and Rule 702's reliability threshold.................................................13

II.    ONLY EN BANC REVIEW CAN RESOLVE THE INCONSISTENCY THIS DECISION CREATES AND PREVENT THE PARALYSIS OF DISTRICT-COURT GATEKEEPING ............................................................................16

CONCLUSION .....................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*,
140 F.3d 494 (3d Cir. 1998) ...............................................................................13

*Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City*,
383 F.3d 110 (3d Cir. 2004) ...............................................................................15

*Deckers Corp. v. United States*,
752 F.3d 949 (Fed. Cir. 2014) ............................................................................17

*EcoFactor, Inc. v. Google LLC*,
137 F.4th 1333 (Fed. Cir. 2025) ..................................................................*passim*

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009) ..........................................................................10

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997)......................................................................................15, 18

*Markman v. Westview Instr., Inc.*,
517 U.S. 370 (1996)......................................................................................10, 19

*Parallel Networks Licensing v. Microsoft Corp.*,
777 F. App'x 489 (Fed. Cir. 2019) .....................................................................14

*Pittsburgh Press Club v. United States*,
579 F.2d 751 (3d Cir. 1978) ...............................................................................13

*Trudell Medical International Inc. v. D.R. Burton Healthcare*,
127 F.4th 1340 (Fed. Cir. 2025) .........................................................................12

**OTHER AUTHORITIES**

Frank Albert & Jeff Burton, *Federal Circuit Signals Tension in Expert Testimony Jurisprudence:* EcoFactor *and* Barry, Fish (Feb. 5, 2026) https://bit.ly/3OMh9ze ..................................................................17

Fed. R. App. P. 40 ........................................................................................8

Fed. R. Evid. 103 .........................................................................................5

Fed. R. Evid. 104 .........................................................................................9

Fed. R. Evid. 614 .....................................................................................5, 11

Fed. R. Evid. 702 ..................................................................................*passim*

H.R. Rep. No. 97-312 (1981)......................................................................19

Jason Hoffman, *Gatekeeping in Flux (Again?): The Federal Circuit Revisits Expert Admissibility*, BakerHostetler (Jan. 21, 2026) https://bit.ly/4qZJb7S.................................................................................17

Erik Milch & Connor Villar, *Federal Circuit Eases Expert Admissibility Threshold*, Proskauer: The Patent Playbook (Jan. 28, 2026) https://bit.ly/4aSRlJf.................................................................17

Nick G. Saros, *A Recent Federal Circuit Decision Has Clouded the District Court's Gatekeeping Role*, Jenner & Block: News and Insights (Feb. 2026) https://bit.ly/3MSkKeD ....................................................17

# <u>TABLE OF ABBREVIATIONS</u>

The following abbreviations are used in this brief.  Emphasis throughout the brief is added by Defendants-Appellees unless otherwise noted.

| Abbreviation | Term |
|---|---|
| (__:__) | patent column and line numbers, or transcript page and line numbers |
| Asserted Patents | U.S. Patent No. 7,670,358, U.S. Patent No. 8,361,121, and U.S. Patent No. 9,668,787, collectively |
| '358 patent | U.S. Patent No. 7,670,358 (Appx113-124) |
| '121 patent | U.S. Patent No. 8,361,121 (Appx125-136) |
| '787 patent | U.S. Patent No. 9,668,787 (Appx149-161) |
| Barry, or Plaintiff | Dr. Mark A. Barry, plaintiff in this civil action |
| court, or district court | United States District Court for the Eastern District of Pennsylvania |
| Court | United States Court of Appeals for the Federal Circuit |
| DePuy | Defendants-Appellees DePuy Synthes Products, Inc. and DePuy Synthes Sales, Inc., collectively |
| JMOL | judgment as a matter of law |
| Neal | David Neal, Ph.D., survey expert for Plaintiff |
| Yassir | Dr. Walid K. Yassir, technical expert for Plaintiff |

# STATEMENT OF COUNSEL

Based on my professional judgment, I believe the panel decision is contrary to the following decisions of this Court and the Supreme Court of the United States, and consideration of this appeal by the full Court is therefore necessary to secure and maintain uniformity of this Court's decisions: *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333 (Fed. Cir. 2025) (en banc); *Trudell Med. Int'l Inc. v. D.R. Burton Healthcare*, 127 F.4th 1340 (Fed. Cir. 2025); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

Based on my professional judgment, I believe this appeal presents a question of exceptional importance: whether, after the 2023 amendments to Federal Rule of Evidence 702 and this Court's en banc decision in *EcoFactor*, a panel may treat as issues of "weight" matters that go to the questions of (i) sufficiency of an expert's basis for his opinions, and (ii) reliable application of methodology, including where trial testimony departs from the governing claim construction and where a survey expert fails to demonstrate representativeness of the survey population and employs flawed survey question design.

*/s/ Gregory A. Castanias*

Gregory A. Castanias
Counsel for Defendants-Appellees

# INTRODUCTION

Barely one year ago, *EcoFactor, Inc. v. Google LLC,* 137 F.4th 1333 (Fed. Cir. 2025), restored the proper understanding of Rule 702, post-2023 amendments. *EcoFactor* reaffirmed a concept that shouldn't be controversial, but too often is—that a district court's discretionary reliability determination is an "essential prerequisite" to letting expert testimony reach the jury. *Id.* at 1340. *EcoFactor* further endorsed the Advisory Committee's admonition that courts act "incorrect[ly]" by treating the "critical questions of the sufficiency of an expert's basis" and the "application of the expert's methodology" as matters of "weight and not admissibility." *Id.* at 1339-40.

The 2-1 panel decision directly conflicts with those en banc holdings. The district court did what *EcoFactor* required:  After hearing live testimony and testing the experts in the crucible of trial—where methodological gaps and legal drift became visible—it excluded two case-dispositive experts under Rule 702 in detailed opinions spanning over 40 pages.  The court found the infringement expert "repeatedly varied from and contradicted" the court's own claim construction, Appx62, while the survey expert's evidence was "so flawed that any damages calculation based on that methodology was necessarily speculative," Appx44. After exercising its discretion to exclude both experts, the court entered JMOL. Appx66.

A divided panel reversed—not because the district court misunderstood Rule 702, but because the majority reclassified the district court's reliability determinations as jury issues. Though acknowledging the black-letter rule that testimony contradicting claim construction must be excluded as unreliable, Op.10, it held that the contradiction the district court found was actually a "credibility" question for the jury. Op.19. For the survey expert, the panel majority acknowledged the survey's pitiful 4% response rate and the expert's concession that representativeness rested solely on his own *ipse dixit*, yet treated those defects, too, as going to "weight," not "admissibility." Op.23-27. At every turn, the majority employed the very "weight-not-admissibility" framework that *EcoFactor* held "incorrect." *Compare* 137 F.4th at 1339, *with* Op.21, 22, 24, 27, 28.

As she did at the panel stage of *EcoFactor*, Judge Prost dissented. Her dissent makes the conflict explicit and explains why it matters: It warns that the majority "contravenes the principles embraced in *EcoFactor* and the 2023 amendments" and "seriously undermines district courts' abilities to carry out their important gatekeeping responsibility." Dissent.2, 12.

The alignment of opinions here further underscores the doctrinal rupture: The majority opinion was authored by one of only two *EcoFactor* dissenters, and the dissent was written by Judge Prost, whose panel dissent prompted *EcoFactor*'s en banc rehearing.

The practical consequences are immediate and devastating—and commentators are already saying as much. *EcoFactor* told courts to exclude unreliable expert testimony so that juries do not ground their decisions in shoddy evidence. Yet the panel decision here signals that if district courts do what *EcoFactor* instructed—especially after hearing live testimony—an appellate panel may reverse by re-labeling reliability defects as "weight" and "credibility" matters. Absent *en banc* intervention, district courts will face irreconcilable instructions on the same threshold question, and Rule 702's gatekeeping role will erode in the cases where it matters most—patent trials in which expert testimony often decides liability and damages.

## BACKGROUND

### A. The Technology and Patents

This case involves three patents owned by Dr. Mark Barry, claiming a linked "derotation" tool system for spinal surgery. Appx24-25. In these procedures, surgeons attach lever-like instruments to screws implanted in the spine and use the instruments to rotate vertebrae back into alignment. Appx24-25. The underlying derotation concept was well known before Barry's patents. Appx47. Barry's asserted improvement was linking multiple instruments together so surgeons could rotate multiple vertebrae at once, rather than requiring a separate surgeon to operate each instrument. Appx25.

**B.      The Lawsuit, Trial, and Exclusion of Barry's Experts**

Barry sued DePuy in 2017 for induced infringement, alleging that DePuy instructed surgeons to assemble its tools in patented configurations covered by his three patents.  Appx15012-15025.

Two of the asserted patents—the '358 and '121 patents—require that the linked tools include a "handle means," which the court construed—at Barry's urging—as "a part that is designed especially to be grasped by the hand." Appx15162-15165.  DePuy's accused instruments are smooth metal shafts that attach to screws in the spine; they are not themselves handles.  Appx5677. Whether any part of DePuy's tools satisfied the "handle means" limitation was therefore a key infringement question for the '358 and '121 patents.  The third patent—the '787 patent—contains no "handle means" requirement; for that patent, the issue was whether surgeons actually linked the tools along and across the spine as claimed.  Appx51; Appx64-65.

The case proceeded to trial in June 2023.  Appx18.  Barry's case depended largely on two experts: Yassir (to establish "handle means" for the '358 and '121 patents), and Neal (whose survey was offered to ascertain the fact and quantity of allegedly infringing use, and support damages).  Op.4-5.  DePuy moved pretrial to exclude both experts.  Appx57.  The court provisionally denied the motions, warning that these pretrial rulings were "necessarily tentative," and that the court

was "prepared to revisit them during trial." Appx1; Appx58; *see* Fed. R. Evid. 103(b). After hearing both experts testify live, and questioning them directly under Rule 614(b), the court was convinced of their unreliability, and excluded their testimony. Appx45-66.

**1.** On direct, Barry's infringement expert Yassir recited, and claimed to apply, the court's "handle means" construction. Appx1237 (122:17-22). His testimony made clear that he did not. At trial, he was confronted with a slide showing the gap between the court's narrower definition and the broader standard he had articulated. He admitted he had treated them as the same, Appx1256 (198:14-24):



Yassir further testified that "everything is a handle means" in a linked system, Appx1255 (195:17-20), and that his working definition was "parts that cannot be assembled without grasping them by the hand"—a standard that would cover

virtually any surgical component, while erasing the construction's "designed especially to be grasped" requirement. Appx1256 (198:14-24).

Yassir even testified that parts a surgeon "generally would" not "want to grab" still counted as "handle means." Appx1257 (204:14-19). The court thus found that Yassir "repeatedly varied from and contradicted" the claim construction, and exercised its discretion to exclude his testimony as "contradictory, unhelpful, and unreliable." Appx62.

**2.** Barry's survey expert, Neal, sent questionnaires to about 4,000 spinal surgeons, asking them to categorize their procedures into six types of tool assemblies; only 164 (4%) responded. Appx34-37. The court excluded the survey for two independent reasons. First, Neal did not show his respondents were representative of any defined population. Appx39. He was asked: "The only support that we have for your statement that this is a representative sample is the fact that you said it, correct?" He admitted: "That's correct." Appx1179 (119:17-20). Second, the survey's categories were internally incoherent: After asking surgeons to quantify how many surgeries they performed by simultaneously rotating *two or more* vertebrae, it asked what subset of those procedures involved rotating *only one* vertebra—and half the respondents gave a nonzero amount. The court called this result "senseless" (Appx43), finding the methodology "so flawed

that any damages calculation based on that methodology was necessarily speculative." Appx44.

With both experts excluded, the court granted DePuy JMOL on all asserted claims. Appx66.

### C. The Panel Decision and Dissent

A divided panel reversed. The majority opinion—authored by one of *EcoFactor*'s two en banc dissenters—held that the district court abused its discretion by excluding both experts, remanding for a new trial. Op.29.

On Yassir, the majority agreed that testimony contradicting a court's claim construction must be excluded (Op.10), but concluded that Yassir's testimony was no "*contradiction*," but merely "an *application*" of the construction, thereby presenting a "credibility" question for the jury. Op.13-14 (emphasis in original), 19. It emphasized that Yassir had recited the correct construction on direct, dismissing as mere "tension" the contradictions laid bare during cross-examination. Op.11-12, 22. On Neal, the majority held that every flaw the district court identified went to "weight" for the jury, not "admissibility" for the court. Op.27.

Judge Prost dissented. She stated that the majority "contravenes the principles embraced in *EcoFactor* and the 2023 amendments" to Rule 702 and "seriously undermines district courts' abilities to carry out their important

gatekeeping responsibility." Dissent.2, 12. As to Yassir, she asserted that the majority "legally errs by conflating admissibility with whether evidence is sufficient to sustain a verdict," applying a JMOL-style sufficiency standard instead of Rule 702's reliability command. Dissent.4. She found it "exceedingly difficult" to characterize the district court's ruling as "*clearly unreasonable*," given that the judge who authored the claim construction was best positioned to determine whether it had been contradicted. Dissent.5. As to Neal, Judge Prost observed that the majority's blanket characterization of the survey's flaws as "weight" issues "harkens back to the very approach that prompted recent amendments to Rule 702." Dissent.7. And she challenged as unprecedented the majority's requirement that the district court cite evidence supporting its inadmissibility determination. Dissent.9.

**ARGUMENT**

**I.   EN BANC REHEARING IS NECESSARY TO SECURE UNIFORMITY WITH *ECOFACTOR* AND AMENDED RULE 702**

En banc rehearing is warranted to secure uniformity in this Court's decisions or to resolve an exceptionally important question. Fed. R. App. P. 40. This case satisfies both criteria.

Start with Rule 702. Under that rule, the district court decides as a matter of admissibility whether expert testimony is reliable. *EcoFactor* reinforced that, emphasizing that the "critical questions of the sufficiency of an expert's basis, and

the application of the expert's methodology" are admissibility questions for the court—not "weight" questions for the jury.  137 F.4th at 1339-40 (citation omitted).  A court that identifies a defect in either area is doing its job.  The jury's role comes later.

Now consider what happened here.  The district court heard both experts over a seven-day trial, questioned them from the bench, and concluded in over 40 pages of detailed written opinions that neither met the reliability threshold.  The panel majority reversed—not because the district court applied the wrong legal standard, but because it relabeled the district court's unreliability findings as matters of "weight" and "credibility" for the jury.  Op.19-22, 27.  That is exactly what *EcoFactor* held "incorrect."  137 F.4th at 1339.  And it is what the 2023 amendments reject as an "incorrect application of Rules 702 and 104(a)"—the notion that courts may defer threshold reliability defects to the jury.

This misstep appears in two concrete ways here—in the panel's treatment of the claim-construction expert, and in its treatment of the survey expert.

A. **The panel's "weight-not-admissibility" treatment of claim-construction contradiction is incompatible with *EcoFactor* and Rule 702 gatekeeping**

The district court found that Yassir's testimony flatly contradicted its construction of "handle means."  Appx62.  The panel called that a "credibility" dispute for the jury.  Op.19.  That got the law backwards.

- 9 -

This Court's law requires expert testimony to conform to underlying legal rules. In *EcoFactor*, this Court held it an abuse of discretion to allow an expert to testify contrary to the legal requirements imposed by a properly construed license agreement. 137 F.4th at 1339-40. Similarly, whether expert testimony conforms to the court's claim construction is a question of legal compliance, not factual credibility: Patent construction, like license-agreement construction, is a legal question for the court, *Markman v. Westview Instr., Inc.*, 517 U.S. 370, 391 (1996), so "[n]o party may contradict the court's construction to a jury," *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009). When an expert's testimony rests on a materially different legal standard, the opinion testimony is not just "weak" but inadmissible: Testimony built on the wrong rule of law cannot "help the trier of fact" under Rule 702. That is an admissibility defect, and Rule 702, as properly understood by *EcoFactor*, assigns it to the court. 137 F.4th at 1339-43.

The record here demonstrates exactly that defect. On direct, Yassir recited the court's construction of "handle means"—"a part that is designed especially to be grasped by the hand"—and said he had applied it, Appx1237 (122:17-22). On cross-examination, however, Yassir revealed a materially different definition: "everything is a handle means" in a linked system, Appx1255 (195:17-20); the term means "parts that cannot be assembled without grasping them by the hand,"

- 10 -

Appx1256 (198:14-24)—and even parts a surgeon "generally would" not "want to grab" still qualified, Appx1257 (204:14-19). As the dissent observed, "[t]hose are plainly different things"—the fact that a component may or even must be grasped during assembly does not mean it was "designed especially to be grasped." Dissent.3.

The district court—having authored the construction, heard the testimony in real time, and questioned the witness under Rule 614(b)—found that Yassir "repeatedly varied from and contradicted" its construction. Appx62. This was a classic gatekeeping judgment: the expert's "application" was not an application at all, but a substitution of a different, incorrect legal standard. That mirrors EcoFactor's expert's assertion that three licensees had "agreed to pay the $X per unit royalty rate" when, as a matter of law, the license agreements said otherwise. *EcoFactor*, 137 F.4th at 1341-43. Contradicting governing law "cannot provide a sufficient factual basis" for expert opinion. *Id.* at 1344.

The panel did not evaluate whether the district court's finding of a contradiction was "clearly unreasonable" under the abuse-of-discretion standard, but instead recharacterized the contradictions as "tension" presenting a "credibility" dispute for the jury. Op.19, 22. The dissent accurately explained that the majority "asks the wrong questions and focuses on the wrong actor." Dissent.4. The majority asked whether "a reasonable factfinder could have either

- 11 -

accepted" the opinion "as persuasive or rejected [it] as implausible"—a framing that assumed Rule 702 admissibility and leapt to the JMOL substantial-evidence standard. Op.10; *contra* Dissent.4-5 (the majority "presuppose[d] that the evidence should have been admitted … sidestep[ping] the role of the district court").

The majority's reframing misunderstood the evidentiary defect: Whether an expert's testimony conforms to the court's claim construction is a question of legal compliance, not factual credibility. This Court held in *Trudell Medical International Inc. v. D.R. Burton Healthcare*, 127 F.4th 1340 (Fed. Cir. 2025), that an expert's testimony "untethered from the district court's claim constructions" is "*methodological[ly] unsound[]*" and an abuse of discretion for a district court to *admit*. *Id.* at 1349-50. It cannot have been an abuse of discretion for this district court to have *excluded* Yassir's claim-construction contradiction—that was a legal-conformity question for the district court. Treating the court's finding as a jury "credibility" issue thus improperly delegates claim-construction authority to the jury.

Finally, the practical consequence of the panel's approach is to make claim-construction gatekeeping effectively impossible. Any reasonably well-prepared expert will recite the correct construction on direct. The trial court alone can detect the gap between recitation and substance, and abuse-of-discretion review exists because of that vantagepoint. But if appellate panels can override that finding by

labeling contradictions "credibility" disputes, then, as Judge Prost warned, "little will remain of that important [gatekeeping] function."  Dissent.6.

**B.**     **The panel's dismissal of survey-methodology defects as matters of "weight" is incompatible with *EcoFactor* and Rule 702's reliability threshold**

The panel's treatment of survey expert Neal followed the same pattern.  The district court identified foundational defects in Neal's methodology and excluded his testimony as unreliable.  Appx32.  The panel relabeled each of those defects matters of "weight."  Op.27.  Again, that conflated the court's threshold reliability determination with the jury's determination of the facts, which must be based on reliable, admissible evidence.

A survey's representativeness, sampling methodology, and question design are foundational to reliability.  Flaws in these core elements that prevent the survey from reliably measuring what it purports to measure are matters of admissibility, not weight.  *See Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 516-17 n.14 (3d Cir. 1998) (cumulative methodological errors rendered survey unreliable and inadmissible); *Pittsburgh Press Club v. United States*, 579 F.2d 751, 759 (3d Cir. 1978) (excluding survey where sample "not designed to be representative").  And *EcoFactor* makes clear that reliability cannot rest on the "*ipse dixit* of the expert."  137 F.4th at 1345-46 (citation omitted).

The district court correctly applied these principles.  After examination, it found Neal's methodology "so flawed that both his survey and testimony—which he bases on that survey—must be excluded as unreliable."  Appx16.  Neal surveyed approximately 4,000 spine surgeons; only 164 responded—a response rate of barely 4%.  Appx34-37.  Yet he offered no evidence that this 4% represented any defined population.  Instead, Neal relied on textbook *ipse dixit*:

> Q. The only support that we have for your statement that this is a representative sample is the fact that you said it, correct?

> A. That's correct.

Appx36; Appx1179 (119:17-20).

The court also identified a fundamental design flaw undermining the survey's reliability.  Respondents were asked how many surgeries involved simultaneously rotating multiple vertebrae and then (contradictorily) how many of those multiple-vertebrae-rotating surgeries involved rotating only a single vertebra.  All should have answered the latter question "zero," but over half did not—a result the court called "senseless."  Appx43; *see Parallel Networks Licensing v. Microsoft Corp.*, 777 F. App'x 489, 492 (Fed. Cir. 2019) (affirming exclusion of patent survey when "survey questions contained broad language that did not distinguish between infringing and non-infringing uses").

A survey that produces such internally contradictory results is not just weak; it is inherently unreliable evidence—it cannot measure what it claims to measure.

*See Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 121 (3d Cir. 2004) (finding "unpersuasive" argument that "problems" with a "survey should have affected only its evidentiary weight but not its admissibility"); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Yet the majority labeled these defects matters of "weight." Op.27. As the dissent observed, the majority "again treat[ed] the district court's admissibility concerns as only involving jury issues, not matters for the court," and "simply announce[d] that these well-reasoned criticisms of Dr. Neal's survey were 'weight'-related" without "meaningfully engag[ing] with them." Dissent.7, 9.

The majority also faulted the district court for not citing "actual evidence" supporting exclusion. Op.24. Its 40-plus pages of analysis (Appx16-66) show otherwise—and in any event, Rule 702 imposes no such requirement. Dissent.9. It is *the proponent's burden* to establish admissibility under Rule 702; if that burden is unmet, exclusion follows. It is not the judge's job to find "actual evidence" of *unreliability* when the proponent fails to demonstrate *reliability*. Exclusion is warranted where there is "too great an analytical gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 146. By finding that Barry failed to bridge that gap and satisfy his burden, the district court properly applied the law. The majority's requirement of independent counter-evidence inverts Rule 702 and chills trial courts' gatekeeping discretion.

The majority's "blanket—and incorrect—characterization harkens back to the very approach that prompted recent amendments to Rule 702." Dissent.7. Its logical endpoint is *de facto* admissibility for any survey—no matter how fundamentally flawed—so long as the proponent invokes cross-examination as the cure. Op.27. But *EcoFactor* and Rule 702 assign the court—not juries—the task of assessing expert reliability. The district court discharged that duty here. After live questioning, it examined the survey's methodological foundations, found them lacking, and excluded the evidence as unreliable. Appx16. By overriding that gatekeeping determination and recasting reliability defects as jury questions, the panel's decision conflicts with *EcoFactor* and Rule 702 and warrants en banc correction.

## II. ONLY EN BANC REVIEW CAN RESOLVE THE INCONSISTENCY THIS DECISION CREATES AND PREVENT THE PARALYSIS OF DISTRICT-COURT GATEKEEPING

This Court convened en banc in *EcoFactor* because the proper scope of Rule 702 gatekeeping is too important to leave uncertain. Yet numerous commentators have already recognized that this divided panel decision (1) has "clouded the district court's gatekeeping role" and "blur[red] the line … between the court's gatekeeping role and the jury's role"; (2) "may create an avenue for expert testimony to evade meaningful gatekeeping" and "highlights an escalating tension" in "expert testimony jurisprudence"; (3) serves as the first attempt at a "sequel to

*EcoFactor*," seeking to "once again" swing "the pendulum … toward jury deference"; and (4) "creates a prime candidate for further *en banc* review."\*

*EcoFactor* made clear that courts must resolve "critical questions" about the sufficiency of an expert's basis and methodology before testimony reaches the jury, 137 F.4th at 1339-40, but the panel treated those as issues of weight for the jury, Op.19, 27—an irreconcilable conflict that only the en banc court can resolve under the prior-panel rule. *Deckers Corp. v. United States*, 752 F.3d 949, 959 (Fed. Cir. 2014).

The question of where the line falls between reliability determinations for the court and weight assessments for the jury arises in virtually every patent-infringement case. Without en banc resolution, courts will have to navigate two contradictory signals on the most consequential evidentiary ruling they make. This will negatively affect litigation in at least three ways.

*First*, courts will be chilled from excluding unreliable expert testimony. In future proceedings, the party seeking admission will cite this decision's holdings that a claim-construction departure is a "credibility" dispute for the jury, Op.19, and that foundational survey-methodology failures are matters of "weight," Op.27. The party seeking exclusion will cite *EcoFactor*'s holding that the "critical

---

\* (1) https://bit.ly/3MSkKeD; (2) https://bit.ly/4aSRlJf; (3) https://bit.ly/4qZJb7S; (4) https://bit.ly/3OMh9ze.

questions of the sufficiency of an expert's basis, and the application of the expert's methodology" are threshold admissibility questions for the court. 137 F.4th at 1339-40. The district court will have no principled basis for choosing between them.

Faced with that impossible choice, judges will hesitate to perform any gatekeeping. A judge who excludes unreliable testimony risks reversal under this decision's expansive "weight" framework; a judge who admits it risks reversal under *EcoFactor*'s insistence on threshold reliability. The inevitable result is decisional paralysis—or, worse, a *de facto* presumption of admissibility, *contra* Fed. R. Evid. 702 ("proponent" must "demonstrate[] to the court" that expert's opinion is reliable), since trial judges will recognize that admitting testimony at least produces a jury verdict that the losing party must then challenge as both erroneous and prejudicial.

*Second*, the decision will invite unreliable expert evidence on legal issues into patent trials. If reciting the right phrases—"I am applying the claim construction" or "I used an accepted methodology"—is enough to avoid gatekeeping, flawed or speculative theories can be repackaged as reliable through expert *ipse dixit*, undermining Rule 702's role as safeguard. *Joiner*, 522 U.S. at 146. And if courts cannot enforce their constructions—clear questions of law— through Rule 702 without risking reversal, those constructions cease to operate as

binding legal instructions and become nominal limits that prepared experts can evade—allowing more marginal theories to reach juries, who have no role in determining legal questions. The result will be a blurred line between judge and jury, law and fact.

*Third*, the decision will destabilize patent litigation. Patent trials routinely hinge on expert testimony, and without meaningful gatekeeping, parties will be incentivized to present unreliable theories to juries. That will increase the cost and length of trials, multiply post-trial motions, and undermine public confidence in outcomes. All of this runs counter to this Court's congressionally mandated responsibility to "strengthen the United States patent system" (H.R. Rep. No. 97-312, at 20 (1981)) by promoting "increased uniformity" and doctrinal stability in patent law. *Markman*, 517 U.S. at 390-91.

## <u>CONCLUSION</u>

The Court should grant rehearing en banc and hold that *EcoFactor* and Rule 702 mean what they say.

Dated: March 23, 2026       Respectfully submitted,

<u>/s/ *Gregory A. Castanias*</u>

| | |
|---|---|
| Patrick J. Norton | Gregory A. Castanias |
| Kenneth Luchesi | Tracy A. Stitt |
| Thomas S. Koglman | Brendan Duffy |
| JONES DAY | JONES DAY |
| North Point | 51 Louisiana Avenue, N.W. |
| 901 Lakeside Avenue | Washington, DC 20001 |

Cleveland, OH 44114-1190
(216) 586-3939

(202) 879-3939
gcastanias@jonesday.com

Kevin V. McCarthy
JONES DAY
250 Vesey Street, 31st Floor
New York, NY 10281
(212) 326-3939

*Counsel for Defendants-Appellees DePuy Synthes Products, Inc., DePuy Synthes Sales, Inc., and Medical Device Business Services, Inc.*

- 20 -

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned hereby certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(b).

1.     Exclusive of the exempted portions of the brief, as provided in Federal Rule of Appellate Procedure 32(a)(7)(B), the brief contains 3,900 words.

2.     The brief has been prepared in proportionally spaced typeface using Microsoft Word 2016 in 14 point Times New Roman font.  As permitted by Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

 Dated:  March 23, 2026                    */s/ Gregory A. Castanias*
                                           Gregory A. Castanias

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2026, I caused the foregoing PETITION

FOR REHEARING EN BANC to be electronically filed via CM/ECF with the

U.S. Court of Appeals for the Federal Circuit, which electronically served the brief

on all counsel of record.


 Dated:  March 23, 2026          */s/ Gregory A. Castanias*
                                    Gregory A. Castanias