# NOS. 23-2226, 23-2234

# IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

MARK A. BARRY,

*Plaintiff-Appellant*,

*v.*

DEPUY SYNTHES COMPANIES,

*Defendant*,

DEPUY SYNTHES SALES, INC., trading as DEPUY SYNTHES SPINE, MEDICAL DEVICE BUSINESS SERVICES, INC., DEPUY SYNTHES PRODUCTS, INC.,

*Defendants-Appellees*.

Appeals from the U.S. District Court, Eastern District of Pennsylvania
No. 2:17-cv-03003-PD (Hon. Paul S. Diamond)

**BRIEF OF WASHINGTON LEGAL FOUNDATION AS AMICUS CURIAE SUPPORTING REHEARING EN BANC**

Cory L. Andrews
WASHINGTON LEGAL FOUNDATION
2009 Massachusetts Ave. NW
Washington, DC 20036
(202) 588-0302
candrews@wlf.org

March 30, 2026

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 23-2226, 23-2234 |
| **Short Case Caption** | Barry v. DePuys Synthes Companies |
| **Filing Party/Entity** | Washington Legal Foundation (amicus curiae) |

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 03/30/2026

Signature: /s/ Cory L. Andrews

Name: Cory L. Andrews

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☑ None/Not Applicable |
| Washington Legal Foundation | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Washington Legal Foundation: | Cory L. Andrews | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

FORM 9 DISCLOSURE STATEMENT .................... i

TABLE OF CONTENTS .................... iv

TABLE OF AUTHORITIES .................... v

INTEREST OF AMICUS CURIAE .................... 1

INTRODUCTION & SUMMARY OF ARGUMENT .................... 2

ARGUMENT .................... 5

I. EN BANC REVIEW IS NEEDED TO ENSURE THAT SCIENTIFIC RELIABILITY REMAINS A QUESTION FOR THE DISTRICT COURT, NOT THE JURY .................... 5

II. THE PANEL MAJORITY'S RULE STANDS ON DEFUNCT PRECEDENT SUPERSEDED BY RULE 702'S AMENDMENTS .................... 11

CONCLUSION .................... 14

CERTIFICATE OF COMPLIANCE .................... 15

CERTIFICATE OF SERVICE .................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Allison v. McGhan Med. Corp.*,
184 F.3d 1300 (11th Cir. 1999) .......... 10

*Bazemore v. Friday*,
478 U.S. 385 (1986) .......... 4, 13

*Beech Aircraft Corp. v. Rainey*,
488 U.S. 153 (1988) .......... 12

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .......... 1, 4, 5

*EcoFactor, Inc. v. Google LLC*,
137 F.4th 1333 (Fed. Cir. 2025) .......... 2, 3, 5, 6, 8

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) .......... 1, 6

*In re Paoli R.R. Yard PCB Lit.*,
35 F.3d 717 (3d Cir. 1994) .......... 13

*In re TMI Litigation*,
193 F.3d 613 (3d Cir. 1999) .......... 4, 13

*Karlo v. Pittsburgh Glass Works, LLC*,
849 F.3d 61 (3d Cir. 2017) .......... 6

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) .......... 1, 10

*Tome v. United States*,
513 U.S. 150 (1995) .......... 12

*Weisgram v. Marley Co.*,
528 U.S. 440 (2000) .......... 6, 9

**Statutes:**

28 U.S.C. § 1295 .......... 3

28 U.S.C. § 2072(b) .......... 4, 12, 13, 14

## TABLE OF AUTHORITIES
(*continued*)

**Page(s)**

**Rules:**

Fed. R. Evid. 104(a) .......... 7, 12

Fed. R. Evid. 702 .......... *passim*

Fed. R. Evid. 702, Advisory Comm. note to 2000 amendment .......... 6

Fed. R. Evid. 702, Advisory Comm. note to 2023 amendment .......... 7, 12

**Miscellaneous Sources:**

Mark A. Behrens & Andrew J. Trask, *Federal Rule of Evidence 702: A History and Guide to the 2023 Amendments Governing Expert Evidence*, 12 Tex. A&M L. Rev. 43 (2024) .......... 11

Jules Epstein, *Cross-Examination: Seemingly Ubiquitous, Purportedly Omnipotent, and "At Risk*," 14 Widener L. Rev. 427 (2009) .......... 8

Lee Mickus, *Amended Rule 702 in 2025: Circuit Courts Embrace the Changed Standard*, WLF Legal Backgrounder (Oct. 7, 2025) .......... 11

Christopher B. Mueller, Daubert *Asks the Right Questions: Now Appellate Courts Should Help Find the Right Answers*, 33 Seton Hall L. Rev. 987 (2003) .......... 9

Hon. Patrick J. Schiltz, *Report of the Advisory Committee* (May 15, 2022) .......... 7, 14

Victor E. Schwartz & Cary Silverman, *The Draining of Daubert and the Recidivism of Junk Science in Federal and State Courts*, 35 Hofstra L. Rev. 217 (2006) .......... 10, 11

N.J. Schweitzer & Michael J. Saks, *The Gatekeeper Effect: The Impact of Judges' Admissibility Decisions on the Persuasiveness of Expert Testimony*, 15 Psychol. Pub. Pol'y & L. 1 (2009) .......... 10

## INTEREST OF AMICUS CURIAE*

Washington Legal Foundation is a nonprofit, public-interest law firm and policy center with supporters nationwide. WLF promotes free enterprise, individual rights, limited government, and the rule of law. It often appears as an amicus curiae to urge exclusion of scientifically unreliable expert evidence. An early critic of "junk science," WLF participated as an amicus in each of the Supreme Court's *Daubert* trilogy cases. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

The quality of decision-making in the federal courts turns increasingly on the willingness of federal judges to take seriously their duty as gatekeepers to stop unsound expert evidence from ever reaching the jury. The panel majority's decision, if allowed to stand, would severely erode that vital gatekeeping function. Unless the full Court intervenes, WLF fears that the panel's rule barring trial judges from scrutinizing the

---

* WLF's unopposed Motion for Leave to File accompanies this brief. No party's counsel authored any part of this brief. No one, apart from WLF and its counsel, contributed money intended to fund the brief's preparation or submission.

factual and methodological assumptions of expert evidence will hollow out Federal Rule of Evidence 702, inviting injustices well beyond the facts and parties of this case.

## INTRODUCTION & SUMMARY OF ARGUMENT

The Petition raises a profound question about the integrity of scientific expert evidence in this Circuit: whether trial judges must faithfully enforce Federal Rule of Evidence 702 as a bulwark against unreliable expert testimony, or whether they must sidestep that duty and pass the buck to juries. By holding that challenges to the factual and methodological foundations of an expert's opinion go only to weight, not to admissibility, the panel majority has chosen the latter approach.

Sitting en banc less than a year ago in *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333 (Fed. Cir. 2025), this Court roundly rejected that antiquated view. *EcoFactor* confirms that district courts serving as gatekeepers under Rule 702 must exclude expert testimony that lacks a reliable foundation in facts, data, or methodology—lest unreliable opinions masquerade as evidence and mislead juries in the complex arena of patent litigation. Under that en banc mandate, which faithfully

implements Rule 702's recent amendments, such reliability flaws can never be papered over as mere questions of "weight" for the jury.

Yet a divided panel has now turned back the clock, with a member of *EcoFactor*'s minority attempting to revive the very "weight-not-admissibility" framework that *EcoFactor* and Rule 702's 2023 amendments expressly abolished. By requiring a jury to grapple with deeply flawed expert opinions despite the trial judge's careful exclusion after a firsthand assessment, the panel's direct assault on *EcoFactor*'s core holding creates an intra-circuit conflict and threatens the uniformity Congress entrusted to this Court under 28 U.S.C. § 1295.

WLF advances two main arguments in support of en banc review. *First*, Rule 702 demands that judges, not juries, decide whether expert testimony is grounded in sufficient facts or data before that testimony may reach the jury. As Judge Prost's cogent dissent warns, the panel majority "contravenes the principles embraced in *EcoFactor* and the 2023 amendments," undermines district courts' "important gatekeeping responsibility," and repeats the very errors that prompted *EcoFactor*'s en banc correction in the first place.

Because jurors lack the tools to dissect and resolve scientific flaws in evidence, this anachronistic approach to admissibility not only ignores the *Daubert* trilogy's demand for vigilant gatekeeping but also the Advisory Committee's explicit warning that the weight-not-admissibility canard is "an incorrect application" of Rule 702. Fed. R. Evid. 702, Advisory Comm. note to 2023 amendment.

Worse still, the panel majority relies on irrelevant, outdated precedent, such as *Bazemore v. Friday*, 478 U.S. 385 (1986) and *In re TMI Litigation*, 193 F.3d 613 (3d Cir. 1999), which treat factual gaps and methodological defects as jury questions. But Rule 702's 2023 amendments squarely forbid that approach, insisting that judges, not juries, decide reliability. These throwback cases thus conflict with Rule 702's renewed rigor and—to that extent, at least—are no longer good law. *See* 28 U.S.C. § 2072(b) ("All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."). Still clinging to this "weight not admissibility" relic, the panel majority's decision elevates stale precedent over plain text and greenlights the very junk science that Rule 702 excludes.

Left to stand, the panel decision will chill trial judges from fulfilling their Rule 702 obligations, invite a flood of speculative expert theories into patent trials, and erode public confidence in outcomes that hinge on great precision. En banc review is thus essential not only to reaffirm *EcoFactor*'s binding authority—which no three-judge panel may override absent Supreme Court intervention or statutory change—but also to safeguard the integrity of Rule 702 in patent litigation, where unreliable testimony can distort verdicts and stifle the very innovation this Court is charged to protect.

WLF urges the Court to grant the Petition and rehear this case en banc.

## ARGUMENT

### I. EN BANC REVIEW IS NEEDED TO ENSURE THAT SCIENTIFIC RELIABILITY REMAINS A QUESTION FOR THE DISTRICT COURT, NOT THE JURY.

Under the Supreme Court's *Daubert* trilogy and Rule 702, district courts play a critical "gatekeeping" role in shielding jurors from unreliable expert evidence. It is thus incumbent on every trial judge to "ensure that any and all [expert] testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. In holding that the

district court abused its discretion by excluding unreliable expert opinions—one inconsistent with the district court's own claim construction, the other riddled with methodological gaps—the panel departed from this Court's clear directive in *EcoFactor*, firmly grounded in Rule 702, that all expert testimony must meet "exacting standards of reliability." *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000).

That is why Rule 702 explicitly assigns the task of ensuring the reliability of expert testimony to district judges alone. Because an expert's "conclusions and methodology are not entirely distinct from one another," *Joiner*, 522 U.S. at 146, "an analysis of the sufficiency of the expert's basis cannot be divorced from the ultimate reliability of the expert's opinion." Fed. R. Evid. 702, Advisory Comm. note to 2000 amendment.

The panel majority insists that because Barry's expert testimony was "fully 'tested by the adversary process,'" exclusion was improper. (Slip Op. at 21) (quoting *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 83 (3d Cir. 2017). Of course, *all* admitted evidence is tested by the adversary process. But under Rule 702, it's no longer enough to invoke the cross-examination of expert testimony while leaving any dispute

about scientific reliability to the weight a jury decides to give that testimony. Yes, challenges to the factual basis underlying an expert's conclusion may ultimately go to weight, but only if a court first finds it more likely than not that the expert has a sufficient basis to support the testimony. Contrary to the panel majority's view, this is a judicial obligation, not a jury's prerogative.

In 2023, the Judicial Conference amended the Rule to clarify this very point. The Advisory Committee stressed that many courts were still wrongly treating defects in the factual basis and methodology of an expert's opinion as questions of weight, not admissibility, contrary to Rules 702 and 104(a). *See* Fed. R. Evid. 702, Advisory Comm. note to 2023 amendment ("These rulings are an incorrect application of Rules 702 and 104(a)."); *see also* see Hon. Patrick J. Schiltz, *Report of the Advisory Committee*, at 6 (May 15, 2022), https://perma.cc/QN6N-KEHA ("treating these questions as ones of weight rather than admissibility . . . is contrary to the Supreme Court's holdings"). Only "once the court has found it more likely than not that the admissibility requirement has been met," will "any attack by the opponent . . . go only to the weight of the evidence." Fed. R. Evid. 702, Advisory Comm. note. to 2023 amendment.

The panel majority's insistence here that the district court should have punted expert reliability to the jury—and, in fact, erred by *not* doing so—defies this command. It also defies *EcoFactor*.

*EcoFactor*'s understanding that, under Rule 702, insufficient facts and data behind an expert's conclusion go *not* to weight but to admissibility also comports with experience and common sense. For while cross-examination has its benefits, it is no panacea; it cannot readily distinguish validly derived expert opinions from junk science. And it can never take the court's place in determining the reliability of an expert's opinion in the first instance. As Professor Jules Epstein has explained:

> This treatment of cross-examination as the palliative of choice has its flaws, not merely in its expectation that cross-examination without other resources can fairly respond to an expert witness. The mythic status of cross-examination in this regard actually impedes accurate fact-finding because leading questions are not always an appropriate or sufficient tool for truth finding. Courts have not acknowledged these limitations.

Jules Epstein, *Cross-Examination: Seemingly Ubiquitous, Purportedly Omnipotent, and "At Risk,"* 14 Widener L. Rev. 427, 437 (2009) (internal citations omitted). That is why simply subjecting an expert witness to a rigorous cross-examination does nothing to ensure the reliability of that

expert's testimony; reliability must always be assessed *before* the testimony is admitted to the jury.

Here the panel majority overrode the district court's decision to exclude patently unreliable expert testimony, insisting that a jury can somehow muddle through the relevant science with the aid of competing expert evidence and cross-examination. But dismissing key, objective flaws in expert evidence as bearing only on the weight of that evidence inevitably leaves jurors with the rarefied task of resolving the basic reliability of the expert's scientific findings. Jurors cannot be expected—and should not be permitted—to make those sorts of reliability determinations. Above all, unreliable evidence "contributes nothing to a 'legally sufficient evidentiary basis'" for a jury verdict. *Weisgram*, 528 U.S. at 454 (internal citation omitted). As for how much "weight" a jury should give unreliable expert evidence, the only acceptable answer is *none*. It should never reach the jury in the first place.

Legal scholars have long noted that "cross-examination does little to affect jury appraisals of expert testimony." Christopher B. Mueller, Daubert *Asks the Right Questions: Now Appellate Courts Should Help Find the Right Answers*, 33 Seton Hall L. Rev. 987, 993 (2003). Indeed,

multiple studies have revealed jurors' commonly held assumption that, because the trial judge admitted the expert evidence, it must have at least passed some test of reliability. *See, e.g.,* N.J. Schweitzer & Michael J. Saks, *The Gatekeeper Effect: The Impact of Judges' Admissibility Decisions on the Persuasiveness of Expert Testimony*, 15 Psychol. Pub. Pol'y & L. 1, 7 (2009). This is precisely why trial judges have a duty to avoid "dumping a barrage of questionable" evidence on a jury likely to be "awestruck by the expert's mystique." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1310 (11th Cir. 1999).

"The basic calipers that jurors use to evaluate testimony—their own life experience—are of little value when jurors evaluate whether an expert is telling the truth." Victor E. Schwartz & Cary Silverman, *The Draining of* Daubert *and the Recidivism of Junk Science in Federal and State Courts*, 35 Hofstra L. Rev. 217, 220 (2006). The Supreme Court has long insisted that any questions about the "factual basis, data, principles, [or] methods" of expert testimony—or "their application"—require the trial judge to determine whether that testimony is reliable *before* sending it to the jury. *Kumho Tire Co.*, 526 U.S. at 149 (emphasis added); *see* Fed. R. Evid. 702(b), (d).

"When a court looks to the data underlying expert opinion but neglects to evaluate its relation to the expert's conclusion . . . ostensibly legitimate data may serve as a Trojan horse that facilitates the surreptitious advance of junk science and spurious, unreliable opinions." Schwartz & Silverman, *The Draining of* Daubert, *supra*, at 237–38. Again, the only way to ensure that a jury does not give too much weight to unreliable evidence is to exclude it. Yet according to the panel majority, doing so is an abuse of discretion. That view is untenable.

## II. The Panel Majority's Rule Stands on Defunct Precedent Superseded by Rule 702's Amendments.

The 2023 amendment to Rule 702 were a corrective force, ensuring that courts exclude flawed expert opinions. *See* Mark A. Behrens & Andrew J. Trask, *Federal Rule of Evidence 702: A History and Guide to the 2023 Amendments Governing Expert Evidence*, 12 Tex. A&M L. Rev. 43, 45 (2024). Enacted to "correct misconceptions that had taken hold in the caselaw," the amended rule supersedes conflicting caselaw, nullifying all prior decisions that misapplied its standards. *See* Lee Mickus, *Amended Rule 702 in 2025: Circuit Courts Embrace the Changed*

*Standard*, WLF Legal Backgrounder, at 4 (Oct. 7, 2025), https://perma.cc/Z5SY-JPSH.

"All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." 28 U.S.C. § 2072(b). Courts may no longer blindly follow precedent that erroneously applied Rule 702. Instead, when the Advisory Committee or Congress amends a rule, courts must consult the Advisory Committee Notes to determine the amendment's intent. *See Tome v. United States*, 513 U.S. 150, 160 (1995). "The Committee's commentary is particularly relevant in determining the meaning of the [rule] Congress enacted." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 165–66 n.9 (1988). Here the Committee's 2023 advisory notes tell us that the amendments were intended to clarify that "the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology," are admissibility questions for the judge, not credibility questions for the jury. Fed. R. Evid. 702, Advisory Comm. note to 2023 amendment. To remove all doubt, the notes go even further: all cases holding otherwise "are an incorrect application of Rules 702 and 104(a)." *Id.*

Yet the panel majority's holding relies on pre-amendment cases that still embody the lenient "weight-not-admissibility" approach that Rule 702 now explicitly rejects. Old cases like *Bazemore* (1986)—issued before the sea change of *Daubert* in 1993—and *TMI* (1999)—issued without benefit of Rule 702's overhaul in 2000 to account for the *Daubert* trilogy—treat factual gaps as weight issues for the jury, not barriers to admissibility. That defunct view no longer has purchase.

Even when the panel majority relies on good law, it misapplies it. The panel twice cites *In re Paoli R.R. Yard PCB Lit.,* 35 F.3d 717 (3d Cir. 1994), but that case emphatically rejects the panel majority's rule. In fact, *Paoli* emphasizes that "*any* step that renders the analysis unreliable . . . renders the expert's testimony inadmissible. *This is true whether the step completely changes a reliable methodology or merely misapplies that methodology*." *Id*. at 754 (emphasis in original).

While pre-amendment precedents that align with revised Rule 702's rigor—like the *Daubert* trilogy and the Third Circuit's decision in *Paoli*—remain authoritative, the evidentiary approaches to admissibility in cases like *Bazemore* and *TMI* are obsolete. *See* 28 U.S.C. § 2072(b).

They are also "contrary to the Supreme Court's holdings." Hon. Patrick J. Schiltz, *supra*, at 6.

This Court should grant the Petition, declare conflicting caselaw superseded under 28 U.S.C. § 2072(b), and once again re-align this Circuit with Rule 702's clarified demands.

**CONCLUSION**

This Court should grant the Petition.

Respectfully submitted,

March 30, 2026

/s/ Cory L. Andrews
Cory L. Andrews
WASHINGTON LEGAL FOUNDATION
2009 Massachusetts Ave. NW
Washington, DC 20036
(202) 588-0302
candrews@wlf.org

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limits of Fed. R. App. P. 29(a)(5) because it contains **2,579** words, excluding the parts exempted by Fed. R. App. P. 32(f).

I also certify that this brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because it uses 14-point Century Schoolbook font.

/s/ Cory L. Andrews
CORY L. ANDREWS
*Counsel for Amicus Curiae*
*Washington Legal Foundation*

March 30, 2026

**CERTIFICATE OF SERVICE**

I certify that on March 30, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit through the CM/ECF system, which will send notice to the attorneys of record here who are registered with the Court's CM/ECF system.

/s/ Cory L. Andrews
CORY L. ANDREWS
*Counsel for Amicus Curiae*
*Washington Legal Foundation*

March 30, 2026